## CALDWELL ET AL., COPARTNERS, TRADING AS CALDWELL & DUNWODY, *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 325. Submitted April 23, 1919.—Decided May 19, 1919.

The provision of the General Railroad Right of Way Act of March 3, 1875, granting a beneficiary railroad company the right to take from the public lands adjacent to its line timber necessary for the construction of its railroad, must be strictly construed, and does not permit that portions of trees remaining after extraction of ties be appropriated, either as a means of business or profit or to compensate the agents employed by the railroad to do the tie-cutting. P. 19.

A grant of "timber" for purposes of railroad construction is not a grant of "trees." P. 21.

Section 8 of the Act of March 3, 1891, c. 561, 26 Stat. 1099, enacting that, in proceedings growing out of trespasses on public timber lands in Colorado and some other States, it shall be a defense that the cutting or removal was by a resident of the State for agricultural, mining, manufacturing or domestic purposes, under rules of the Interior Department, etc., but providing that nothing in the act contained shall operate to enlarge the rights of any railway company to cut timber on the public domain, gives no protection to persons who, having cut ties as agents of a railroad company under the Act of March 3, 1875, *supra*, seek to appropriate the remaining tops of the trees cut, for the purpose of sale. P. 21.

The right to take timber granted by the Act of March 3, 1875, *supra*, cannot be enlarged by a permission from an official of the General Land Office. P. 22.

53 Ct. Clms. 33, affirmed.

THE case is stated in the opinion.

*Mr. William C. Prentiss* for appellants:

Under various laws and conditions similar situations have been presented and uniformly, wherever a right to cut or take timber has been recognized, the right to dispose of it as incidental to its cutting or taking has followed. *United States v. Cook*, 19 Wall. 591; *Shiver v. United States*, 159 U. S. 491; *Stone v. United States*, 167 U. S. 178; 27 L. D. 366; 30 L. D. 88.

In all of these instances the right to cut the timber is raised as an incident and carries with it the vesting of title in the occupant to timber so lawfully cut. The right of a railroad company to take timber for construction purposes is an express grant. Taking "timber necessary for the construction of its railroad" contemplates the taking of trees. In the United States statutes the word "timber" used collectively signifies standing trees. 28 Enc., 2d ed., 537, and cases cited.

In the absence of any express provision as to the disposition of lops and tops or other surplus, the principles recognized in the cases of Indian occupants, homesteaders,

and mineral claimants furnish the only reasonable solution.

The Land Department, in its regulations under this act and the Act of June 3, 1878, authorizing the taking of timber from mineral lands (see 8 Copp's Land Owner, p. 94; 9 *id.* p. 100; 4 L. D. 150; Land Office Annual Report, 1886, pp. 446, 451, 453), did not undertake to make any declaration as to the ownership of the tops and lops of trees, but merely made provisions against waste and in avoidance of fire. It evidently regarded the tops, lops and brush all as refuse, which, if not removed, should be piled and burned.

The Land Department could lawfully authorize the taking of the lops and tops in consideration of careful piling of the brush so as to minimize the danger of forest fires, even if the lops and tops did not pass to the railroad company as part of the "timber" which it was authorized to take.

To permit the railroad companies to use the surplus tops, lops, etc., as an element in adjusting the compensation of agents employed to fell the trees and manufacture therefrom the lumber required for construction purposes, is promotive of the policy of the act and in accord with the general policy of the Government.

And final recognition by the Land Department that the right to dispose of "refuse" or "surplus" is incidental to the right to take timber for railroad construction purposes, is evidenced by the instructions of the Commissioner to the Chief of Field Service at Denver. A comparison of the language of the several acts authorizing the taking of timber from the public lands (Rev. Stats., § 5264; Acts of 1875, 1878, 1891,) shows that they contemplate the taking of trees themselves and in none of them is any notice taken of any surplus not available for the purposes specified. See Land Office Report for 1887, p. 480.

[Counsel here analyzed and criticised the opinion of the

District Court in *United States* v. *Denver & Rio Grande Ry. Co.,* 190 Fed. Rep. 825, in comparison with the earlier opinion of the Circuit Court of Appeals in the same case, 124 *id.* 159.]

It is alleged in the amended petition that the lands where the timber was cut were designated for the purpose by the Commissioner of the General Land Office, through the Chief of Field Service, and that the tie slash was to be utilized for the purposes specified in the Act of 1891 and within the State of Colorado, thus bringing the case clearly within that act. *United States* v. *Lynde,* 47 Fed. Rep. 297.

The opinion of Assistant Attorney General Van Devanter, of November 27, 1899 (29 L. D. 322), to the effect that this act does not authorize the sale of timber, went only to sale of timber by the Secretary of the Interior under assumed authority of the act.

The regulations of 1900 (29 L. D. 571, 572) declared that the Act of 1891 (as well as the Act of 1878) did not authorize the cutting of timber for sale to others. But in 1904 the Circuit Court of Appeals for the Ninth Circuit, in *United States* v. *Rossi,* 133 Fed. Rep. 380, held that such attempted restriction of the Act of 1878 was beyond the power of the Land Department; and in 1905 this court, in *United States* v. *United Verde Copper Co.,* 196 U. S. 207, applied the same principle in declaring void the provision of the same regulations declaring that timber could not be cut for smelting purposes.

*Mr. Assistant Attorney General Frierson* for the United States.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This action was brought by appellants to recover the value of certain timber cut from the public lands of the

United States in the State of Colorado, called "tie slash" or "tie slashing," the term being used to describe the tops of trees the bodies of which have been used for making railroad ties.

The right of recovery is based upon contracts with the Denver, Northwestern & Pacific Railway Company, which had been given the right to cut timber upon the public lands adjacent to the line of its road by the Act of Congress of March 3, 1875, c. 152, 18 Stat. 482.

The Court of Claims sustained a demurrer to the petition and dismissed it. To review that action this appeal has been prosecuted.

Appellants were, in June, 1906, by due appointment of the railway company, its timber agents, to cut timber from the public lands for construction of the railroad under the act of Congress. And by agreement with the company they were given all of the "tie slash" of the trees cut down for the purpose. Pursuant to the contract, and prior to October, 1906, they manufactured and delivered to the company 88,797 ties, which left a large amount of "tie slash."

By a letter from one N. J. O'Brien, describing himself as "Chief, Field Division, G. L. O.," and expressed to be by instructions from the Commissioner of the General Land Office, there was granted to appellants authority to cut timber under the act of Congress and "to sell and dispose of tops and lops of trees that" they "may cut for construction" of the road which could not be used for road construction purposes. Inquiry first was to be made of the officers of the railway company if they would purchase the tops and lops appellants had on hand.

The letter contained a ruling of the Land Office that contractors should confine their cutting strictly to such timber as was needed by the railway company and that such "refuse" as resulted from such cutting might "be

disposed of by the railroad company or by the contractors without violation of existing law." A violation of the law, it was stated, would require a notice to the company to nullify the contract and agency and would subject the contractors to be proceeded against "as in ordinary cases of timber trespass."

Thereafter appellants entered into another contract with the company under which they manufactured additional ties and delivered them to it, and a further amount of "tie slash" was left. A large amount of this appellants agreed to sell to the Fraser River Timber Company, of Denver, Colorado, and to the Leyden Coal Company, of the same place, they sold 200 cars of mining props cut by them from the "tie slash," all to be used in the State of Colorado.

March 2, 1907, the land from which the ties had been cut was by presidential proclamation included in the Medicine Bow National Forest and the officers of the Forest Service permitted appellants to remove the poles already cut from the "tie slash" and also to have all of tops and refuse on the so-called "fireguard" 200 feet wide along the railway for a distance of two miles, but refused to allow them to have any of the remainder of the "tie slash," and took possession of and sold it; and the proceeds were covered into the Treasury of the United States. To recover the sum of the proceeds thus covered into the Treasury, or such other amount as might be found to have been received by the United States from such sale, this action was brought.

The elements for consideration are not many. The first of these is the Act of 1875, *supra.* It grants a right of way to the railway company [the grant is to railroad companies of a certain description—we make it particular for convenience] through the public lands of the United States to the extent of 200 feet on each side of its central line, and the right to take from the public lands

adjacent to its line " . . . umber necessary for the construction of said railroad." The right given is to take "timber" and this, it is argued, necessarily means "trees," and as there is no provision for disposition of what shall be left of them after using such portions for railroad purposes, it must be determined by "reason and analogy," and from these appellants argue that the railway company was entitled to the "tie slash" as incident to its right to cut under the act of Congress. They adduce *United States* v. *Cook*, 19 Wall. 591; *Shiver* v. *United States*, 159 U. S. 491; *Stone* v. *United States*, 167 U. S. 178.

The instances of the cases, however, are not in analogy to that of the case at bar. In the first the right was given to Indians as a legitimate use of land reserved by them from the cession of a larger tract to the United States, the right of use and occupancy being unlimited. The second case involved the cutting and sale of timber by a homesteader and they were considered a use of the land, his privileges with respect to standing timber being analogous to those of a tenant for life; the third case was of like kind, and the other two cases were cited. Other cases referred to by appellants struggled with the problem without solving it and we need not review or comment upon their reasoning nor consider some state cases.

The contention of appellants encounters the rule that statutes granting privileges or relinquishing rights are to be strictly construed; or, to express the rule more directly, that such grants must be construed favorably to the Government and that nothing passes but what is conveyed in clear and explicit language—inferences being resolved not against but for the Government. *Wisconsin Central R. R. Co.* v. *United States*, 164 U. S. 190; *United States* v. *Oregon & California R. R. Co.*, 164 U. S. 526. And the Government invokes the rule in the present case and cites in implied support of the invocation *United States* v. *Denver & Rio Grande Ry. Co.* 150 U. S. 1, and in express

support of it *United States* v. *Denver & Rio Grande Ry. Co.*, 190 Fed. Rep. 825, 828. And these cases were cited by the Court of Claims for its judgment.

The rule, it seems to us, is particularly applicable. There was a grant of timber by the Act of March 3, 1875, not of trees, but of timber for purposes of railroad construction, not as a means of business or of profit; nor could it be made an element, as contended, of compensation to the agents employed to cut it.

Appellants invoke the Act of March 3, 1891, c. 561, 26 Stat. 1095, 1099, in justification and as giving them a right independently of their asserted right derived through the railway company. Section 8 of that act provides that in criminal prosecutions for trespass on public timber lands in Colorado (and some other States) or to recover timber or lumber cut, it shall be a defense to show that the timber was cut or removed from the lands for use in the State by a resident thereof for agricultural, mining, manufacturing or domestic purposes under the rules of the Interior Department, and has not been transported out of the State. But it is provided that nothing in the act contained shall operate to enlarge the rights of any railway company to cut timber on the public domain, and there are other provisions giving the Secretary of the Interior the power to designate the tracts from which the timber may be cut or to prescribe the rules and regulations for the cutting.

We think it is clear that appellants are not within the provisions of the act. They are not and were not in the designated classes nor contemplated the uses which the act protects. They were agents of the railway company for so much of the timber as was to be used in railroad construction; of what was left they were simply vendors for profit. To enable them to so use the act or to use it for any but the designated purposes would be a violation of that provision of the act which forbids its operation

"to. enlarge the rights of any railway company to cut timber on the public domain"; it would make the act available to a railroad as a means of profit or other purpose than road construction. And its value would be a temptation to do so. In this case it is alleged that the value of the "tie slash" that the officers of the Forest Service took possession of (it was only part of that which was cut) "was, and is, $26,454.90."

Finally, appellants rely upon the letter of the Chief, Field Division, General Land Office, *supra*. The immediate answer is that made by the Court of Claims: the want of power in the officer to enlarge the Act of March 3, 1875, and to give rights in the public lands not conferred by it.

*Judgment affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the decision.