651 F.2d 700
 Cleo M. BRADFORD and LaJuan Gay Bradford, husband and wife,
Plaintiffs-Appellees,
v.
UNITED STATES of America, ex rel. DEPARTMENT OF INTERIOR,
BUREAU OF LANDMANAGEMENT DIVISION OF LANDS AND
MINERALS, Defendant-Appellant,
and
Pauline Street Johnson; Farmers Union Cooperative Royalty
Company, acorporation; Flag Oil Corporation of Delaware, a
corporation; Flag-Redfern OilCompany, a corporation; and J.
D. Lee, Defendants-Appellees,
State of Oklahoma, ex rel. Commissioners of the Land Office;
John S. Badger;and F. Blair Thorp Nuclear
Corporation of New Mexico, a
corporation,Defendants.
 No. 79-1228.
 United States Court of Appeals,
Tenth Circuit.
 Argued Sept. 17, 1980.
Decided June 8, 1981.
 
 Martin Green, Atty., Dept. of Justice, Washington, D. C. (Sanford Sagalkin, Acting Asst. Atty. Gen., Washington, D. C., Larry D. Patton, U. S. Atty., and John E. Green, First Asst. U. S. Atty., Oklahoma City, Okl., Carl Strass, Atty., Dept. of Justice, Washington, D. C., with him on the brief), for defendant-appellant United States of America.
 Larry M. Weber of Myers, Mollison & Weber, Altus, Okl., for plaintiffs-appellees, Cleo M. Bradford and LaJuan Gay Bradford.
 James C. Pinkerton, Tulsa, Okl. (Carl Pinkerton, Tulsa, Okl., with him on the brief), for defendant-appellee Flag-Redfern Oil Co.
 Granville Tomerlin of Tomerlin & High, Oklahoma City, Okl., filed brief for defendant-appellee Farmers Union Cooperative Royalty Company. Barney W. Miller of Miller, Smith & Dawson, Oklahoma City, Okl., joined in briefs of Farmers Union Cooperative Royalty Co. and Flag-Redfern Oil Co. for defendant-appellee Pauline Street Johnson. Charles C. Yon of Oklahoma City, Okl., joined in brief of Farmers Union Cooperative Royalty Co. for defendant-appellee J. D. Lee.
 Before DOYLE, McKAY and SEYMOUR, Circuit Judges.
 SEYMOUR, Circuit Judge.
 
 
 1
 Plaintiffs Cleo M. and LaJuan Gay Bradford (Bradford) brought this quiet title action pursuant to 28 U.S.C. § 2409a.[1] Named as defendants were the owners of the property to the northwest of the Bradford land, including Pauline Street Johnson, Farmers Union Cooperative Royalty Company, Flag Oil Corporation, J. D. Lee and other interest holders (the Johnson defendants), and the owner of the property to the southeast of the Bradford land, the United States. The property of all parties to the litigation is contiguous to the Red River in Harmon County, Oklahoma.
 
 
 2
 The original complaint alleged that Bradford owned the entire bed of the Red River adjoining his land, and that the respective defendants owned the entire riverbed adjoining their lands. Bradford sought to establish the lateral boundaries extending across the river between his land and that of the Johnson defendants to the northwest and the United States to the southeast. Appendix A to this opinion is a copy of a diagram, drawn on a 1921 survey, that shows the approximate relationship of the parties' land to one another and to the Red River.
 
 
 3
 The Johnson defendants filed answers and cross-claims alleging ownership of the entire riverbed adjoining their property. In its answer, counterclaim and cross-petition, the United States admitted the riparian nature of the lands at issue, and that Bradford and the Johnson defendants were entitled to the north one-half of the Red River bed. But it asserted ownership of the south half of the riverbed on the basis of Oklahoma v. Texas, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771 (1922). In addition, the United States raised 28 U.S.C. § 2409a(f) as an "affirmative defense." That statute provides:
 
 
 4
 "Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States."
 
 
 5
 The United States cited two decisions of the Supreme Court, Oklahoma v. Texas, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771 (1922), and Oklahoma v. Texas, 260 U.S. 606, 43 S.Ct. 221, 67 L.Ed. 428 (1923), and their historical notoriety as the sole grounds for establishing the knowledge requirement of the statute.
 
 
 6
 Subsequently, Bradford filed an amended complaint disclaiming any interest in the south half of the riverbed and alleging only that through the acquisition of his riparian land he had acquired title to the north half. The Johnson defendants did not abandon their claims to the entire riverbed abutting their land.
 
 
 7
 Pursuant to a pretrial conference and order, Bradford and the United States agreed that the median line of the Red River bed and the boundary between their lands would be established by a recent U. S. Government survey. Bradford and the Johnson defendants agreed that the boundaries between their lands would be determined in accordance with the Oklahoma Supreme Court opinion in Goins v. Merryman, 183 Okl. 155, 80 P.2d 268 (1938). The pretrial order stated that the principal remaining issue was the ownership of the south half of the riverbed claimed by both the United States and the Johnson defendants. Although the pretrial order declared that the district court had jurisdiction over the cause of action, the statute of limitations issue raised in the answer of the United States was not mentioned.
 
 
 8
 The United States subsequently filed three briefs and an amended answer, all claiming ownership only of the south half of the riverbed adjoining the property of Bradford and the Johnson defendants. The riparian character of the lands was expressly admitted by the United States in these pleadings. The parties thereafter entered into stipulations that declared Bradford the owner of the north half of the riverbed adjoining his land and the United States the owner of the south half, established the boundaries between the lands of Bradford and the United States, resolved all factual disputes, and left the only remaining issue of law the ownership of the south half of the riverbed abutting the property of the Johnson defendants. The case was submitted to the trial court on these stipulations.
 
 
 9
 As we have stated, the United States based its claim upon the Oklahoma v. Texas cases, particularly the opinion reported at 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771 (1922). The Johnson defendants relied on Choctaw & Chickasaw Nations v. Seay, 235 F.2d 30 (10th Cir.), cert. denied, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956). Appendix B is a copy of an historical map showing the relation of Oklahoma and the Red River to the lands involved in the cited federal actions. After tracing the history of the Oklahoma v. Texas litigation, the trial court concluded that those cases are not determinative here because they conclusively established ownership of the Red River bed only between the mouth of the North Fork and the 98th degree of west longitude, an area which does not include the land at issue in this case.
 
 
 10
 According to the stipulated facts, the lands of Bradford and the Johnson defendants and all of the adjoining bed of the Red River originally belonged to the United States. The United States issued the initial patent to the Bradford land to Bradford's predecessor in 1905, and the initial patent to the land now owned by the Johnson defendants in 1925. The common law rule concerning conveyances of riparian land was set out by this court in Seay :
 
 
 11
 "Under the common law, a grant of land bounded on a non-navigable river by a grantor who owns to the center or thread of the stream conveys to the grantee the land to the center or thread of the stream, unless the terms of the grant and the attendant circumstances clearly denote an intention to stop at the edge or margin of the river.
 
 
 12
 "When, however, the grantor owns the entire bed of the stream, but no part of the upland on the opposite side, in the absence of a clear indication of a contrary intention from the terms of the grant and the attendant circumstances, the grant will be construed to convey to the grantee the entire bed of the stream."
 
 
 13
 235 F.2d at 35 (emphasis added). The district court examined the original patent and the circumstances surrounding its conveyance and found no clear indication that the United States intended to retain any part of the Red River bed. Accordingly, it concluded that the Johnson defendants, as successors in interest to the original patentee, own the entire riverbed abutting their property.
 
 
 14
 The United States raises two issues on appeal. First, it renews its contention that the suit is barred by 28 U.S.C. § 2409a(f). Second, it argues for the first time that the lands at issue were not riparian either when patented or at any time thereafter, and that therefore principles of riparian ownership should not be applied. We hold jurisdiction to be established in this case as a matter of law. Moreover, under the circumstances surrounding this litigation, the interests of justice would not be served by allowing the Government to present a new theory of relief for the first time on appeal. In any event, the Government's new theory is totally without merit under long established principles of property law. Accordingly, the judgment is affirmed.
 
 I.
 
 15
 The Government has consented to be sued in quiet title actions under 28 U.S.C. § 2409a(a). Such an action is barred, however, if it is commenced more than twelve years after the date upon which the plaintiff or his predecessor in interest knew or should have known of the claim of the United States. See 28 U.S.C. § 2409a(f). Timeliness is a jurisdictional prerequisite to suit under section 2409a. Knapp v. United States, 636 F.2d 279, 282 (10th Cir. 1980).
 
 
 16
 The complaint in this case expressly alleged jurisdiction. The Government challenged that jurisdiction on the sole basis that Oklahoma v. Texas, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771 (1922), and Oklahoma v. Texas, 260 U.S. 606, 43 S.Ct. 221, 67 L.Ed. 428 (1923), "prove such knowledge as is required by the statute" because of their "historical notoriety." Rec., vol. I, at 32. In its answer to the cross-petition of the United States, Defendant Farmers Union Cooperative summarized the Government's position on this point as an assertion that the Oklahoma v. Texas cases "established that the United States claimed title to all of the so-called South Half of the Red River lands ... throughout the entire length of that portion of the Red River constituting the division line between the State of Oklahoma and the State of Texas, sufficient to invoke the operation of 28 U.S.C. § 2409a(f) ...." Rec., vol. I, at 40. Farmers Union then denied this contention, alleging the inapplicability of the Oklahoma v. Texas decisions because they specifically indicate that the title issues therein were being decided exclusively on the language of the particular conveyances and treaties involved in those cases.
 
 
 17
 The Government does not assert that the appellees or their predecessors "knew" of the Government's claim, only that they "should have known" because of the "notoriety" of the Oklahoma v. Texas decisions. In other words, it is the Government's position that those cases gave constructive notice of a claim by the United States. The trial judge implicitly disposed of this contention when he held for appellees on the merits. He noted that the Oklahoma v. Texas cases were confined to the express language of the relevant treaties and patents governing the conveyances in those cases, and held that the patent in this case, in view of the common law rules of construction, simply does not support the Government's argument. Indeed the Government admits in its brief on appeal that the Oklahoma v. Texas cases do not support the position it took below on the merits.
 
 
 18
 In sum, Bradford and the Johnson defendants asserted jurisdiction under the statutory scheme of 28 U.S.C. § 2409a, the Government questioned that jurisdiction solely on the basis of its interpretation of two cases, and the district court concluded that those cases do not support a claim by the Government. We agree with the district court. It was not necessary to "try" the issue of jurisdiction in any evidentiary sense. The issue was purely one of law as to whether those cases could give notice of the Government's claim, thereby triggering the twelve-year period specified in 28 U.S.C. § 2409a(f). We must conclude as a matter of law that Bradford and the Johnson defendants carried their burden to establish jurisdiction.
 
 II.
 
 19
 The Government argues for the first time on appeal that the appellees' lands are not now and never have been riparian. This is an audacious argument in view of the Government's concession in its answer, cross-petition and stipulation of facts to both the riparian nature of the lands at issue and appellees' ownership to the middle of the riverbed. Indeed the Government's entire position in the trial court was grounded upon the riparian nature of these lands. The Government now seeks to have this court hold everything accomplished below for naught, and to permit wholly new factual and legal contentions to be injected into the litigation at this late stage of the proceedings.
 
 
 20
 "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); accord, Neu v. Grant, 548 F.2d 281, 287 (10th Cir. 1977); United States v. Immordino, 534 F.2d 1378, 1381 (10th Cir. 1976). The Supreme Court has explained that this rule is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues ... (and) in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).
 
 
 21
 This court has pointed out that the rule is particularly applicable where the party wishing to raise the new issue on appeal invited the alleged error below. See Neu v. Grant, 548 F.2d at 287. In this case, the Government's claim and its stipulations were founded on the riparian character of the lands. Appellees were therefore justified in believing that this issue was settled and that no evidence showing the riparian nature of the lots was necessary. The Government offers no reason for its failure to raise the issue below other than to admit that it erroneously chose to rely exclusively upon the Oklahoma v. Texas cases to support its theory of relief. The Supreme Court has definitively stated that "(t)he Government ... may lose its right to raise factual issues of this sort ... when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation." Steagald v. United States, --- U.S. ----, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). The Government's contention on appeal that it is entitled to the entire riverbed is particularly egregious with respect to the Bradfords, who gave up their claim to the south half of the riverbed in reliance on the Government's admission in its answer that the Bradfords owned the north half.
 
 
 22
 Under all of these circumstances, a gross injustice would be worked upon these appellees if we disregarded an established principle of appellate review and required the entire suit to be relitigated simply because the Government lost the first time around. Even were we to permit relitigation, it would be futile because the Government could not prevail upon the new theory it wishes to assert. In view of the lengthy treatment by the dissent of this theory, some observations on its lack of merit are appropriate.
 
 III.
 
 23
 The Government seeks to avoid the effect of the common law principles applicable to conveyances of riparian lands as set forth by this court in Choctaw & Chickasaw Nations v. Seay, 235 F.2d 30 (10 Cir. 1956). To do so, it now contends that the lots at issue here are not riparian and never have been. The dissent apparently agrees, finding persuasive the fact that the Red River bed normally contains very little water.
 
 
 24
 However, the Government itself established the riparian nature of the lots at issue here, and indeed of all the lots in Oklahoma bounded by the bed of the Red River, when it made the official plat and survey which is incorporated by reference into the descriptions contained in the original patents. The riverbed was as dry then as it is now.[2] If the Government had believed at that time that the riverbed was too dry to form a riparian boundary with the adjoining land, it could have surveyed the entire riverbed into whole lots right across to the border of Texas. Instead, the Government survey and plat divided the land adjoining the riverbed into fractional lots having as a boundary the meander line of the Red River. Thus the Government clearly considered these lots to be riparian when it drew up the plat because it showed them to be bounded by a natural watercourse. See United States v. 1,629.6 Acres of Land, 503 F.2d 764, 767 (3d Cir. 1974).
 
 
 25
 An opinion of the Attorney General, dated July 12, 1926, contains further evidence showing the Government's recognition of the riparian nature of lands adjoining the Red River. That opinion not only discusses ownership of several sections of the riverbed under the doctrine of riparian land, it cites with approval the very rule applied by the trial court here.
 
 
 26
 The Government incorporated the official survey and plat by reference into the property description of the original patents. The patentees were entitled to rely on that plat, which described their lots as riparian. The Government now seeks to repudiate the plat over fifty years after the fact by pointing to a condition which was in existence and well known when the lands were surveyed and patented, namely the usually dry condition of the riverbed. The dissent approves of this procedure even though it would create a conveyance entirely different from the one that was intended by the parties at the time. Such a result ignores fundamental doctrines of property law.
 
 
 27
 In every case cited by the Government in which the ownership of the Red River bed has been litigated, the lots adjoining the riverbed were accepted without question as being riparian. The Government has cited no case involving the conveyance of lots adjoining the river in which the land was found not to be riparian. The Supreme Court specifically noted the riparian nature of the lands on the north bank, see Oklahoma v. Texas, 258 U.S. 574, 591-97, 42 S.Ct. 406, 413-15, 66 L.Ed. 771 (1921), and applied common law principles to the conveyance of these "riparian tracts." Id. at 595, 42 S.Ct. at 414. This court has also recognized lands adjoining the Red River bed to be riparian and has likewise applied the appropriate common law rules to determine what land was conveyed by the grant of fractional lots bounded by the river. Seay, 235 F.2d 30. There was no more water in the portions of the Red River involved in those cases than there is in the section of the riverbed at issue here. Those cases are controlling on the issue, and preclude a determination that the lots here are not riparian.
 
 
 28
 These conveyances are to be construed according to the law of the state of Oklahoma, which embodies the common law. Seay, 235 F.2d at 35. Under the common law of property, when "the grantor owns the entire bed of the stream, but no part of the upland on the opposite side, in the absence of a clear indication of a contrary intention from the terms of the grant and the attendant circumstances, the grant will be construed to convey to the grantee the entire bed of the stream." Id. (emphasis added) (footnote omitted). It is undisputed that the Government owned the entire riverbed prior to the conveyance of the original patents. The patents themselves convey the entire lots according to the official survey and plot, and contain no reservation of any interest on the part of the United States. Under the common law the grant must be construed to have conveyed the entire riverbed.
 
 
 29
 The dissent disregards the application of this common law rule and points instead to two grounds from which it believes an intent by the Government to reserve the riverbed may be inferred: namely, the inclusion in the patent descriptions of only the uplands adjoining the riverbed; and the great magnitude and value of the riverbed when compared to the adjoining land. However, these circumstances fall far short of a clear indication of an intent to reserve the riverbed.
 
 
 30
 With regard to the first ground, the court in Seay pointed out:
 
 
 31
 "It has been the policy of the Federal government, from its origin, in disposing of the public land bordering on non-navigable streams to measure the price to be paid for it by the quantity of upland granted and to make no charge for land under the bed of a stream. To carry out that policy, meander lines are run in surveying fractional portions of land bordering upon non-navigable rivers, not as boundaries of the tracts, but for the purpose of defining the sinuosities of the banks of the stream and to ascertain the quantity of land in the fractions for which a purchaser is to be charged."
 
 
 32
 235 F.2d at 35-36 (emphasis added) (footnote omitted). Here, the Government was following its own policy of including in its patent only the measure of the uplands and not the riverbed itself. Thus this fact cannot be construed as any indication of an intent to reserve the riverbed.
 
 
 33
 The Government's argument that its intent to reserve title to the riverbed can be inferred from the allegedly general knowledge of the potential value of the riverbed is also without merit. The Government, having itself established the riparian nature of the lots in question, knew or should have known at the time of the original conveyances that the only way it could retain title to the riverbed was to expressly reserve it in the patents. That it knew of the value of the riverbed and still failed to specifically reserve it argues more persuasively for an intent to convey than an intent to reserve.
 
 
 34
 Finally, a brief discussion of Smith v. United States, 593 F.2d 982 (10th Cir. 1979), is in order. In Smith a dispute arose over whether a government grant of riparian lands included accretions occurring before conveyance to the patentee. The general common law rule is that where a lot is shown on a plat to be bounded by the meander line of a river, the actual water line is the boundary and not the line as drawn on the plat. Under this rule, accretions to the uplands pass by the grant. Smith recognized a narrow and carefully drawn exception to this general rule, and held that where substantial accretions occur to riparian lands prior to their conveyance, the line shown on the plat may control over the actual water line. Smith did not address the issue of the ownership of the riverbed itself and its facts are not at all similar to those in the instant case. Because Smith creates an exception to long-standing principles of the common law of property, its value as precedent should be carefully limited to closely parallel fact situations. It is clearly not applicable to the instant litigation and its effect should not be extended by an alleged analogy.
 
 The judgment is affirmed.APPENDIX A
 
 35
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLEAPPENDIX B
 
 
 36
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 37
 The historical map of the State of Oklahoma is taken from page 226 of Geological Survey Bulletin 1212, entitled Boundaries of the United States and the Several States, by Franklin K. van Zandt, United States Government Printing Office, Washington, D. C., 1966.}
 
 
 38
 WILLIAM E. DOYLE, Circuit Judge, dissenting.
 
 
 39
 I respectfully dissent.
 
 
 40
 I regret that I am unable to join in the majority opinion. It is due to the lack of jurisdiction plus the lack of merit.
 
 I.
 The Problem of Jurisdiction
 
 41
 It is of utmost importance to take note of the fact that federal jurisdiction in this case is wholly dependent on full compliance with 28 U.S.C. § 2409a which applies to civil actions against the United States to quiet title to real property. Jurisdiction is granted under certain conditions set forth in the statute. Generally the United States, as sovereign, is immune from suit except to the extent that it has given express consent.
 
 
 42
 Subsection (c) imposes the first condition. It requires that the complaint filed pursuant to the jurisdiction here granted shall set forth with particularity the nature of the right, title or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title or interest claimed by the United States.
 
 Subsection (f) of § 2409a provides:
 
 43
 Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.
 
 
 44
 Thus an action which accrued more than twelve years before filing of the action is barred and the accrual is when plaintiff or his predecessor in interest knew or should have known of the interest of the United States.
 
 
 45
 This statute is the only source of jurisdiction for plaintiffs' cause of action since the case arises under state law. Therefore, plaintiffs' ability to sue the United States stands or falls on their ability to comply with the statute.
 
 
 46
 The United States has indeed consented to be sued in quiet title actions against it but it has expressly limited its consent to suits filed within twelve years of the date of accrual of the plaintiff's cause of action. Any waiver of sovereign immunity by the United States must be limited to the conditions set forth in that statute. See Munro v. United States, 303 U.S. 36, 58 S.Ct. 421, 82 L.Ed. 633 (1938).
 
 
 47
 The legislative history of § 2409a(f) clearly recognizes that the section was enacted with the purpose of eliminating stale claims. See e. g., 1972 U.S.Code Cong. & Adm.News, 4547, 4550, 4552-53. Set forth in the legislative history, starting at page 4552, is a letter from the Deputy Attorney General addressed to the Chairman of the Sub-Committee No. 2, Committee on the Judiciary, House of Representatives. In that letter to Congress the position of the Department of Justice with regard to the statute of limitations is expressed. The letter suggested that the statute of limitations be extended from six to twelve years for quiet title actions. The Deputy Attorney General said that this extension of time would give claimants to lands in which the United States also claimed an interest ample time in which to bring suit, without necessitating the United States having to defend against stale claims. The Deputy Attorney General then addressed the question of the time when the action accrues. On this he said:
 
 
 48
 As to the question of time an action accrues for purposes of the running of the statute of limitations, we would suggest that the action be deemed to have accrued on the date the plaintiff, or his predecessor in interest, knew or should have known of the claim of the United States. We believe that this is a reasonable approach to the question of how to determine the time an action accrues. A plaintiff would merely have to state that he did not learn of the claim of the United States and had no reason to know of the claim more than twelve years prior to the filing of his claim. If the United States wished to assert that the statute of limitations had run, it would then have the burden of establishing this fact.
 
 
 49
 In the case at bar the plaintiffs have not made an effort to comply with the jurisdictional suggestions set forth in the legislative history. They have not alleged that neither the plaintiffs nor their predecessors did not learn of the claim of the United States and had no reason to know of the claim more than twelve years prior to the filing of the claim.
 
 
 50
 The United States did assert in its answer that the statute of limitations had run. However, the United States had no opportunity to pursue this in court for the reason that no trial was had. The "trial" consisted of legal argument which was an exchange of views between the court and counsel. Counsel for the government said little and did not mention the jurisdiction matter.
 
 
 51
 In view of the way that the matter was handled, it is clear that the jurisdiction problem was ignored. The statute provides in plain terms that the date of accrual of the action for statute of limitations purposes is the date that the plaintiff, or the plaintiff's predecessors, either knew or should have known of the interest of the United States in the land; not on the date that this legislation was passed. If twelve years has passed from the time of plaintiffs' discovery of (or the time that plaintiffs should have discovered) the interest of the United States, the plaintiff is out of court. Since this is a jurisdictional statute of limitations, this issue can be raised by the Court of Appeals. Grosz v. Andrus, 556 F.2d 972 (9th Cir. 1977). It cannot be said that the United States is barred from raising this defense because of some procedural deficiency. A jurisdictional impediment cannot be waived, and it cannot be avoided by ignoring the question of jurisdiction.
 
 
 52
 To add to the mental suffering, this court has actually recognized that the twelve year statute of limitations set forth in § 2409a(f) is to be strictly construed in favor of the government. Stubbs v. United States, 620 F.2d 775 (10th Cir. 1980); Knapp v. United States, 636 F.2d 279 (10th Cir. 1980), (Judge Seymour). Thus, in Stubbs and Knapp, this court has held that even where the government's interest in a plaintiff's property was based on a null deed, such governmental interest, even without legal title, constituted a cloud on plaintiff's title sufficient to render the notice provision of § 2409a(f) satisfied. This court stated in Knapp that:
 
 
 53
 The test for accrual under section 2409a(f) is when 'the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.' 28 U.S.C. § 2409a(f). Knowledge of the claim's full contours is not required. All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's. Cf. United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (medical malpractice claim against Government accrues when plaintiff becomes aware of existence of his injury and its probable cause, not when he later learns of its legal significance).
 
 
 54
 636 F.2d at 283.
 
 
 55
 In Knapp and Stubbs the plaintiffs had been given actual notice that the United States was asserting an interest in the land in question, although that interest was legally invalid. However, in Amoco Production Co. v. United States, 619 F.2d 1383 (10th Cir. 1980), (Judge McKay), this court stated that if state law unambiguously provided that constructive notice of a claim under local recording statutes would be imputed to a plaintiff, such constructive notice would satisfy the notice requirement of § 2409a(f), and plaintiffs' claim against the United States would be barred under that statute. In Amoco, this court stated that while under federal law a "stray deed" (that is, one which is recorded outside of a purchaser's grantor-grantee chain of title) imports no constructive notice to subsequent takers, the court should look to state law for the applicable legal doctrine. Utah law on the stray deed issue was ambiguous; therefore this court declined to impute constructive knowledge of the deed to plaintiffs. This court, did indicate that unambiguous state law (if there had been such) to the contrary would have been followed, and that constructive notice, where applicable, would satisfy the notice requirement of § 2409a(f). This court stated that the operative words of the statute, "should have known," "import a test of reasonableness." 619 F.2d at 1388. The question reduces, therefore, to whether it would have been reasonable for plaintiffs or their predecessors in interest to have discovered the United States' interest in the property in question.
 
 
 56
 Whether the court has jurisdiction to hear a claim which has been brought pursuant to § 2409a is of itself a question of law to be determined after consideration and interpretation of relevant factual matters. The question whether § (f) of 2409a is invoked because a patentee or his successor in interest knew or should have known of the claim of an interest by the United States in the property is, of course, a mixed question of law and fact. Kinscherff v. United States, 586 F.2d 159 (10th Cir. 1978).
 
 
 57
 In Brown v. United States, 496 F.Supp. 903, 907 (D.N.J.1980) the district court noted that "the date on which the claim of the United States of an interest in the land became known, or should have become known, is an issue of fact ...." These factual matters must be determined by the trial court after a hearing in which both parties have had an opportunity to present all relevant factors to the attention of the court. Kinscherff, supra.
 
 
 58
 On this appeal the government argues that the United States is the owner of the bed of the Red River in question, what is left of it, because at the time of the original conveyance of the land to plaintiffs' predecessors in interest, the land conveyed was not riparian. It also argued that there was no intention on the part of the government that this land in the bed of the former River was to be conveyed to plaintiffs' predecessors. This issue was not raised before the trial court, however, but we have already noted that the case was not tried.
 
 
 59
 Our repetition does not detract from the proposition that the first issue to be considered and determined in the event of remand would be that of jurisdiction. There can be no short circuit as to this. Moreover, jurisdiction is not conferred by stipulation, consent, waiver or any other means short of adjudication.
 
 
 60
 The defense of the statute of limitations is jurisdictional in its nature when a suit is against the United States. Munro v. United States, supra; Knapp v. United States, supra. Accordingly, the failure to satisfy the requirements of 28 U.S.C. § 2409a(f) is not waived. The jurisdiction issue may be raised at any time and may be raised sua sponte by the court. See Grosz v. Andrus, supra.
 
 
 61
 When this court is presented with a factual question which goes to the heart of the court's jurisdiction to hear the case, it is certainly incumbent upon us to consider that issue even though it was not raised and even though it was not tried below. The question whether the land was riparian at the time the patent was issued must be considered as it relates to the jurisdictional issue.
 
 
 62
 In summary we are saying that not only is there an issue as to jurisdiction, we are also saying that presumptively there isn't any jurisdiction whatsoever at this time, since there has not been a statement by the plaintiffs such as that required by the statute and the legislative history, namely a statement concerning the nature of the government's interest and a statement as to the plaintiffs' knowledge or lack of knowledge of the interest of the government.
 
 II.
 The Merits of the Government's Position
 
 63
 Some of the additional questions which would have to be considered and determined upon retrial are:
 
 
 64
 (1) Was the land riparian at the time that it was originally conveyed to plaintiffs' predecessors in interest? If not, would this fact reasonably suffice to put the original patentees on notice that they had no claim to the riverbed and that the United States claimed it?
 
 
 65
 (2) Was the river bordering the land in question completely dry, partly dry or not dry at all at the time (1923) the land was originally patented to plaintiffs' predecessors in interest? If the river was dry, the question to be asked is, "would this fact have been sufficient to put the original patentees on notice that the law of riparian rights did not apply to him and thus that he had no rights to the river bed and that the United States, the original owner, probably claimed ownership?"
 
 
 66
 There are other possible evidentiary inquiries that might affect the outcome of the jurisdictional dispute:
 
 
 67
 Did the limited area conveyed serve to communicate notice to plaintiffs' predecessors that no intent existed by the United States to convey anything except that particular property described?
 
 
 68
 Did the plaintiffs ever pay taxes on this riverbed?
 
 
 69
 Did the plaintiffs or their predecessors ever make claim to ownership in this property?
 
 
 70
 Jurisdiction is, of course, essential to a case in federal court, and ordinarily that is the first item that is addressed. Consent will not create jurisdiction. It would appear that the plaintiffs were not desirous of dealing with the facts or law surrounding this issue. They sought a decree that they were the owners of the land without establishing that the court had jurisdiction to try it.
 
 
 71
 There are other issues of fact which should be the subject of inquiry at a trial. The time lag between the issuance of the original patents and the formal claim in the present suit is not only great, it is unexplained. The original patents bordering on the river bed were issued between 54 and 74 years prior to the time this suit was filed, and any number of incidences could have led to circumstances reasonably likely to give plaintiffs or their predecessors notice of the United States' interest in the river bed. Timeliness is a jurisdictional prerequisite to suit under § 2409a, Knapp v. United States, supra.
 
 
 72
 At the time of the grants to Bradford and the Johnson predecessors the United States owned all of the land in the area. Thus no mental strain is required to believe that the United States did not will the bed of the river to the homesteaders. For these reasons the cause must be remanded for the purpose of having a trial on the questions of jurisdiction.
 
 III.
 The Riparian Question
 
 73
 We must point out at the threshold that the tract which was granted in 1925 by the United States to the predecessors of the Johnsons, was very small. It was roughly 109 acres. The tract which in this case has been decreed to the Johnson defendants extends to the south bank of this river bed, a distance of a mile to a mile and one-half. Thus the acreage given is enormous and out of proportion to the small amount of acreage which was originally granted. A number of Supreme Court decisions are more or less contemporary to the original grant. One of these is Oklahoma v. Texas, 258 U.S. 574, 42 S.Ct. 406, 66 L.Ed. 771. There the Court said in passing "when United States owns the bed of a non-navigable stream in the upland on one or both sides it is free, when disposing of the upland, to retain all or any part of the river bed." The Court continued that "whether it is done in any particular instance, it is essentially a question of what it intended" and further said that:
 
 
 74
 "if by treaty or statute or the terms of the patent, it has shown it intended to restrict the conveyance to the upland, or to that and a part only of the river bed, that intention will be controlling and if its intention be not otherwise shown, it will be taken to have assented that its conveyance should be construed and given effect in this particular according to the law of the state in which the land lies."
 
 
 75
 258 U.S. 594-595, 42 S.Ct. 414.
 
 
 76
 The Supreme Court was dealing with a conveyance connected with the Red River bed and it specifically said that the United States had the option when granting these tracts, homesteads which are on a river bed of a non-navigable stream, that the United States is free to dispose of the upland or to retain all or any part of the river bed. The Court added that whether in any particular instance it has done so that an intent to convey it had to be shown and, if it is shown, that it intended to restrict the conveyance of the upland or to that and a part only of the river bed that intention is controlling. If its intent be not otherwise shown it will be taken to assent that this conveyance will be construed and given effect in this particular according to the law of the state in which the land lies.
 
 
 77
 It cannot be said that the particular patent here in question was shown to have been made with intent to grant the entire river bed from the north to the south bank. For one thing the description of the tract granted was specific and there was no indication of intent to transfer the remainder of the land. Surely if it had intended to give the river bed, which was mineral land and known to be so at the time, it would have said so. It is also worthy of mention that a statute, 43 U.S.C. § 1131 provides that persons qualified under the homestead laws of the United States and who were bona fide occupants of land in the territory established as Greer County, Oklahoma, were entitled to continue occupation of such lands with improvements thereon, not exceeding one hundred and sixty acres, and shall be allowed until January 1, 1898, the preference right, within which to initiate the claim thereto. This one hundred and sixty acre limitation applied to the land that was here granted.
 
 
 78
 The Johnson defendants and the trial court relied to a large extent on the Choctaw and Chickasaw Nations v. Seay, 235 F.2d 30 (10th Cir.), cert. denied, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956), decision of this court. That case did not take up the issue of whether or not there was any stream that provided a basis to claim riparian rights. This was a dispute with the Indian tribes which involved a derivation of intent from the treaties with the Indians; also a great deal of history. Needless to say, though, the Choctaw and Chickasaw Nations decision does not throw any light on the intention to give away the bed of the river to the Johnson defendants.
 
 
 79
 The trial court was impressed with the fact that the patent failed to expressly set forth an intent to retain the Red River bed. From that fact the court concluded that conveyance of the entire Red River bed all the way to the south bank was intended. The reason for this was that there was no intention which could be inferred that the United States intended to retain the property in dispute.
 
 
 80
 There is an intent to be inferred from the fact that there was a small grant on the bank of the river bed, and from the fact that there was a dearth of water and hence no riparian rights. It is extremely difficult to accept the proposition that an inference is to be drawn that several hundred acres of mineral land is transferred to a homesteader notwithstanding that there was an express limitation in the grant in terms of metes and bounds and area transferred.
 
 
 81
 Silence regarding the river bed does not show any positive intent to grant it. The law is opposite; it holds that when the United States conveys land, particularly mineral land, the patent is construed favorably to the government. Only that which is clearly conveyed passes.
 
 
 82
 In United States v. Union Pacific Railroad Company, 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1956), the Supreme Court construed a grant of land to the Union Pacific which reserved mineral resources. Thus it was somewhat different on its facts from our case. But it did express a principle that is entitled to some weight here. A right-of-way had been granted to the railroad company. The Court said:
 
 
 83
 we would have to forget history and read legislation with a jaundiced eye to hold that when Congress granted only a right-of-way and reserved all 'mineral lands' it nonetheless endowed the railroad with the untold riches underlying the right-of-way. Such a construction would run counter to the established rule that land grants are construed favorably to the government, that nothing passes except what is conveyed with clear language, and that if there are doubts they are resolved for the government, not against it. Caldwell v. United States, 250 U.S. 14, 20-21 (39 S.Ct. 397, 398, 63 L.Ed. 816).
 
 
 84
 353 U.S. at 116, 77 S.Ct. at 687.
 
 
 85
 Also in Caldwell v. United States, 250 U.S. 14, 39 S.Ct. 397, 63 L.Ed. 816, the Supreme Court had to construe a grant of timber to a railroad company of the right to take from the public lands adjacent to its line timber necessary for the construction of its railroad. The court said that this had to be strictly construed and that it did not permit that portion of trees remaining after extraction of ties to be appropriated as a means of business profit or to compensate the agents employed by the railroad to do the tie cutting. "A grant for purposes of railroad construction is not a grant of trees." In disposing of the matter it was further said:
 
 
 86
 The contention of appellants encounters the rule as statutes granting privileges or relinquishing rights are to be strictly construed; or, to express the rule more directly, that such grants must be construed favorably to the government and nothing passes but what is conveyed in clear and explicit language inferences being resolved not against but for the government." Wisconsin Central Railroad Co. v. United States, 164 U.S. 190 (17 S.Ct. 45, 41 L.Ed. 399); United States v. Oregon and California Railroad Company, 164 U.S. 526 (17 S.Ct. 165, 41 L.Ed. 541).
 
 
 87
 250 U.S. at 20, 39 S.Ct. at 398.
 
 
 88
 The error of the trial court is compounded by the majority in inferring an intent to convey all of this river bed to the Johnson defendants as part of a grant of the bank property along the river bed. The failure to receive any evidence or conduct an inquiry resulted in resolution of all doubts in favor of the grantee, the predecessor of the Johnsons. This result is also in conflict with the proposition that intent is a question of fact which is not to be determined without the taking of evidence and fairly weighing of it in a quest for the truth. On the record that is now presented it would be more in keeping with the evidence to find that there was indeed an intent to reserve it; otherwise it would not have been in the form of a conveyance by numbered lots. Such a description fails to show an intent to convey over a mile plus river bed which had minerals. Such an intent on the part of President Coolidge, who was named as a grantor in the deed, was particularly inconceivable.
 
 IV.
 
 89
 Are there riparian rights in this case?
 
 
 90
 Does a river bed which is dry, except when there is a flood, give rise to riparian rights? I submit that it does not. The definition of riparian lands is contained in Restatement of Torts, Section 843 as follows:
 
 
 91
 (R)iparian land is a term of common usage applied to land that has certain physical relations to water courses and lakes; it signifies that persons in possession of such lands have peculiar rights and privileges ordinarily called riparian rights, in respect to the use of such waters which other persons do not have or do not have to the same extent. Outstanding among these rights and privileges, as the term signifies, the authors continue, are privileges of taking water and of obstructing the flow of the stream for certain purposes and rights to object to unprivileged taking and obstruction by others. Persons who do not possess such lands may have some rights and privileges with respect to a water course or lake but their rights and privileges are not so extensive as those of the possessors of such land. Thus the possessor of a non-riparian land may have the right to object to the pollution of a water course or lake which unduly harms him in the use or enjoyment of his lands even though he may have no legally protected interest in the use of the water itself.
 
 
 92
 It is fundamental that riparian land is that which has certain physical relations to water courses and lakes. On that account it gives rise to certain rights and privileges ordinarily to use the waters called riparian rights with respect to the use of such waters which other persons do not have or do not have to the same extent. But water is the essence of the right and the presence of water and the rights with respect thereto is essential to riparian rights. It is the right to make use of the water that adjoins the land. Such a right is contrary to the concept adopted by the majority which gives not water but dry land.
 
 
 93
 Therefore, the assumption is that the riparian owner has access to water and is bounded by water and it certainly does not contemplate a great stream bed that has been abandoned by the water. In this case, for example, the north area of the river has long since lost its water. Whatever channels are flowing are narrow, ribbon-like and are on the south side.
 
 
 94
 Thus there are grave doubts as to the existence of riparian rights in connection with the Johnson lots which, although assumed to be riparian, are not shown to have any relationship to substantial or any water or water course. Existence of the rights depends on the assumption that they are riparian. It is questionable here whether any such rights to the bed of the stream can actually exist. Certainly before these lands are finally awarded to these oil companies and to the Johnson defendants, there should be an inquiry as to the nature and character of the river bed.
 
 
 95
 Another problem which is here present and which should be the subject of inquiry is the high and great disproportion between the little piece of land that the Johnsons' predecessors obtained from the government in 1925 and the tremendous acquisition which the judgment of the district court would give to them.
 
 
 96
 The facts above are not dissimilar from those which were presented to this court in Smith v. United States, 593 F.2d 982 (10th Cir. 1979). There the United States had conveyed a tract of land along the Canadian River in Oklahoma. Some adjoining lands, as a result of accretion, had added some 147 acres to the original 37.08 acres contained in the two lots which had been conveyed on the bank of the river. In this instance there was a genuine river. There had been accretion and the question presented was whether the accretion had occurred prior to the time when the grantees had become the owner of the basic land. The proof was ruled insufficient to establish that the accretion took place after the conveyance of the 37.08 acres to plaintiff. In fact most of the accretion seemed to have occurred prior to the date of conveyance of the 37.08 acres. Although the court upheld the plaintiff's contention that there was accretion, it rejected the plaintiff's argument of entitlement to the 147.12 added acres resulting in accretion. This court, in an opinion, asked whether the grantee should take the rights to the accreted 147.12 acres and answered in this way. It said that the:
 
 
 97
 accepted rule of construction is that where land is described by lot number only, if bounded by a river 'which is a shifting line and may gradually and imperceptibly change, (it) is just as fixed a boundary in the eye of the law as a permanent object, such as a street or wall.' Jefferis v. East Omaha Land Company, 134 U.S. 178 (10 S.Ct. 518, 33 L.Ed. 872) (1890). The cases also recognize that boundary references to natural monuments or objects will control over references to courses and distances. These rules are founded on the 'presumed intentions of the parties.' Security Land & Exploration v. Burns, 193 U.S. 167 (24 S.Ct. 425, 48 L.Ed. 662) (1904).
 
 
 98
 593 F.2d at 986.
 
 
 99
 This court concluded the controversy by holding that the description in the patent was binding and that the accreted land was not that of the grantee. It cited Walton v. United States, 415 F.2d 121 (10th Cir. 1969); Snake River Ranch v. United States, 542 F.2d 555 (10th Cir. 1976) and quoted from the latter case: "In a public grant nothing passes by implication and, unless the grant is clear and explicit regarding the property conveyed, a construction will be adopted which favors the sovereign rather than the grantee." 593 F.2d at 988.
 
 
 100
 Thus the court in Smith took a position contrary to that which was taken by the majority in the case at bar. The rationale for the Smith court's decision was that inasmuch as most of the accretion occurred prior to the date of the conveyance, it was unreasonable to assume that a purchaser could have thought he was receiving 184 plus acres when the government bid form listed only 37.08 acres. It said:
 
 
 101
 We ought not hold a conveyance described as 37.08 acres and priced on that basis conveyed nearly four times that amount of additional land, unless there is a compelling reason. Since most of the accretion occurred prior to the date of the conveyance, it does not seem reasonable to assume the purchaser could have thought he was receiving 184 plus acres when the government bid form listed only 37.08 acres. This does not appear to be a situation where having the waterfront was important in the bidding and purchase. We are concerned that frequent title disputes could arise if relatively small accretions are held not to pass to one in Stephenson's position.
 
 
 102
 593 F.2d at 988.
 
 
 103
 We cite the Smith case because it is entirely parallel to this case from the standpoint of being a grant of public lands and the effect of a specific description. There are several cases which are cited in Smith which support this same proposition. See Security Land & Exploration Co. v. Burns, 193 U.S. 167, 188, 24 S.Ct. 425, 431, 48 L.Ed. 662 (1904); Gleason v. White, 199 U.S. 54 at 61-62, 25 S.Ct. 782 at 783-84, 50 L.Ed. 87 (1905).
 
 
 104
 One reason that the court in Smith did not allow the accreted area to be part of the grant was because in view of the proof, it would have amounted to unjust enrichment. Surely that same situation is present in the case at bar.
 
 
 105
 In conclusion the Justice Department has presented in this court a very different case from that which was presented to the trial court. But merely because there was a failure to present proof and to make arguments in the trial court such as the Justice Department has made here should not constitute a waiver of the government's rights, particularly in the area of jurisdiction. The case is an extraordinary one in that the government's presentation of the issue of jurisdiction and indeed the substantial merits was not presented at the trial level. To dispose of the case on the present record would constitute a grave injustice. It is for that reason that I would remand the case for further proceedings.
 
 
 
 [1]
 28 U.S.C. § 2409a(a) provides in relevant part:
 "The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights."
 
 
 [2]
 "The river has its source in the Staked Plains of northwestern Texas, and from there until it gets well into Oklahoma is within a region where the rainfall is light, is confined to a relatively short period in each year, and quickly finds its way into the river. Because of this the river in the western half of the state does not have a continuous or dependable volume of water. It has a fall of 3 feet or more per mile, and for long intervals the greater part of its extensive bed is dry sand, interspersed with irregular ribbons of shallow water and occasional deeper pools. Only for short intervals, when the rainfall is running off, are the volume and depth of the water such that even very small boats could be operated therein. During these rises the water is swift and turbulent, and, in rare instances, overflows the adjacent land. The rises usually last from one to seven days, and, in the aggregate, seldom cover as much as forty days in a year."
 Oklahoma v. Texas, 258 U.S. 574, 587, 42 S.Ct. 406, 411-12, 66 L.Ed. 771 (1921).