# DOMER v. DISTRICT OF COLUMBIA.

STREETS AND SIDEWALKS; NUISANCES; MUNICIPALITIES; CONSTRUCTIVE NOTICE.

1. While the illegal and permanent occupation of any part of a public sidewalk in this District by an individual for his own exclusive use and benefit, whether with or without the permission of the municipal authorities, will constitute a nuisance; the occupation by the owner of an apartment house of a parking space adjacent

to his building under a permit from the authorities to inclose the same, according to the general parking system of the city of Washington, with an iron fence containing two gates to open inwards; and the construction and maintenance of the iron fence and gates, will not in themselves constitute a nuisance, so as to render the District liable, without actual or constructive notice, for an injury received at night by a pedestrian from being struck by one of the gates which by reason of the bolt and latch being insecure, swung outwards.

2. Notice of the dangerous condition of a street or sidewalk is imputed to the municipal authorities, where such condition has existed so long that they could not help, in the exercise of ordinary care and diligence, knowing that fact, and did not know it because they failed to exercise proper vigilance; and the publicity necessarily given prior accidents caused by such a dangerous condition, tends to show that it was brought to the attention of the authorities.

3. Testimony in an action by a pedestrian using a sidewalk against the municipality to recover damages for personal injuries received at night, from coming into contact with an outward-swinging iron gate, which though originally constructed to swing inwards and not outwards, swung both ways by reason of the bolt and latch having become insecure, which gate was part of an iron fence inclosing a parking space adjacent to an apartment house, is sufficient to be submitted to the jury as tending to show the dangerous character of the obstruction so caused and to charge the defendant with constructive notice of it, when to the effect that several persons other than the plaintiff had been injured by it when similarly using the sidewalk during the year previous to the plaintiff's injury; and it is error to direct a verdict for the defendant in such an action.

4. But, in such an action, the jury, in connection with such testimony, should consider the peculiar character of the obstruction, the fact that it appeared at one time and disappeared at another, and that the municipal agents might well have passed and repassed daily many times and yet not have recognized the obstruction unless their attention was specially directed to it.

No. 1202.  Submitted October 17, 1902.  Decided March 3, 1903.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, entered upon the verdict of a jury directed by the court, in an action against the District of Columbia to recover damages for personal injuries.        *Reversed.*

The COURT in the opinion stated the case as follows:

This is a suit at common law to recover against the District of Columbia for personal injuries sustained by the appellant, Lydia L. Domer, in consequence of an obstruction in the highway, for which the District is claimed to have been responsible.

The suit was originally instituted by the appellant conjointly with her husband, Samuel Domer, a minister of the gospel in this city; but he departed this life during the progress of the cause. One John L. Waggaman, owner of the property adjacent to the street whereon the appellant's accident occurred, and to whom it seems to be assumed the placing of the obstruction in the street was originally due, was joined in the suit as codefendant with the District; but at the trial the cause as to him was voluntarily dismissed by the plaintiff.

The circumstances of the accident and injury to the plaintiff, for which the suit was instituted, are these: On the night of January 20, 1900, Mrs. Domer, accompanied by her husband, was walking along the sidewalk of H street northwest, near Tenth street, in this city, in front of an apartment house known as " The Lincoln," alleged to have been owned at the time by Waggaman, and was somewhat severely injured by violent contact with an iron gate which swung open over the sidewalk, extending outwards from an iron railing that inclosed a parking space adjacent to the building. It was the more western of two gates in the railing, one of which gave access to the main door of the building, and the other of which, the one which caused the accident, gave access to the kitchen, and was used for taking in supplies thereto. It appeared from the testimony in the case that the railing had been constructed under a permit for the purpose issued by the proper authorities of the District of Columbia, which required that the gates should be made to open inwards toward the building, and not outwards over the sidewalk, and that in fact it had been so construed; but that, in course of time, for some reason, it became liable to get out of order, in conse

quence of the fact that the bolt and latch were insecure, and would swing outwards as well as inwards. It appeared from the testimony that it swung outwards quite frequently; that at various times before the accident to the appellant several persons had run against it and been more or less injured; and that, according to the testimony of one witness, most of these accidents happened in the daytime, and that the gate in question more frequently swung outwards than inwards, and in fact habitually stood over the sidewalk.

At the close of the testimony the trial court, on the motion of counsel for the District, directed the jury to return a verdict in favor of the defendant, on the ground that there was no testimony to show that the District had any notice, actual or constructive, of the existence of the alleged obstruction. From the judgment thereupon rendered the plaintiff has appealed.

*Mr. B. F. Leighton* for the appellant.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas,* Assistant, for the District of Columbia:

1. Where but one inference can reasonably be drawn from the evidence, the question of negligence or no negligence is one of law for the court. *District of Columbia* v. *Moulton,* 182 U. S. 579; *Hendrick* v. *Lindsay,* 93 U. S. 143; *Bevans* v. *U. S.,* 13 Wall. (U. S.) 57, 80 U. S. (XX) 531; *Walburn* v. *Babbitt,* 16 Wall. (U. S.) 577; 83 U. S. (XXI) 489; *Four Packages* v. *U. S.,* 97 U. S. 404; *B. & P. RR. Co.* v. *Jones,* 95 U. S. 439; *Gavett* v. *Railroad Co.,* 16 Gray (Mass.), 501; *Merchants' Bank* v. *State Bank,* 10 Wall. (U. S.) 604; *Pleasants* v. *Fant,* 22 Wall. (U. S.) 121; *Macon* v. *Shores,* 97 U. S. 272; *Elliott* v. *Chicago, Mil. & St. P. RR. Co.,* 150 U. S. 245; *Town of Orleans* v. *Platt,* 99 U. S. 676; *Patton* v. *Texas & Pac. Ry. Co.,* 179 U. S. 658. Positive testimony met only by testimony to a conclusion of law does not constitute a conflict of testimony requiring the case to be submitted to the jury. *Sanborn* v. *Lefferts,* 16 Abb. Pr. 42; 58 N. Y.

179.   Merely raising a question as to the credibility of a witness who is unimpeached does not take the case out of the rule.   *Robinson* v. *McManus,* 4 Lans. (N. Y.) 380; *Newton* v. *Pope,* 1 Cow. (N. Y.) 109; *Lincoln* v. *French,* 105 U. S. 611; *Fresh* v. *Gilson,* 16 Pet. (U. S.) 327.

2. The defendant did not disregard any duty, nor wrongfully permit and allow the particular sidewalk to be and remain obstructed and in a dangerous and unsafe condition by permitting said iron gate " to swing out and over and across the sidewalk," as alleged in the declaration and stated in the evidence.

3. The plaintiff alleged a joint liability and proved in any event only a several liability on the part of the District of Columbia, and therefore there is a variance.   *Trowbridge* v. *Forepaugh,* 14 Minn. 133; *Powell* v. *Thompson,* 80 Ala. 52; *Brookville* v. *Arthurs,* 130 Pa. St. 501; *Trustees, etc.* v. *Foster,* 156 N. Y. 354–359; 2 Dill. on Mun. Corp., Sec. 1034.   There is no liability stated in the evidence, for there is not a syllable of testimony as to the length of time the gate remained over the sidewalk prior to the plaintiff's accident.

Again, the case must be one of *actual obstruction* of the sidewalk, not of defect in the gate or *liability to obstruct* the sidewalk.   No matter how defective the gate may have been if it did not *actually obstruct* the sidewalk, there can be no pretense of liability.   It is a matter of common knowledge and observation that many gates to parking fences in this city swing outwards.   In a populous town, where land is very valuable, it is not unreasonable to erect buildings and fences on the line of the street and to place doors and gates in them, so as when opened to swing over the street.   *O'Lind* v. *Lothrop,* 21 Pick. (Mass.) 292–297; 2 Dill. on Mun. Corp., Sec. 734; *Howes* v. *District of Columbia,* 2 App. D. C. 193; *District of Columbia* v. *Libbey,* 9 App. D. C. 325.

4. The parking fence was a lawful structure by virtue of the police regulations, passed March 2, 1899; the building regulations, revised and adopted June 26, 1891, and the legislative assembly act for the protection of parks in streets and avenues, passed June 20, 1872.   Abert, Comp. Stats.,

Secs. 121–123, p. 179. No question of authority can be raised. The building regulations were authorized by Congress, and the right to make them has been repeatedly sustained. *Mertz* v. *District of Columbia,* 18 App. D. C. 434–437; *Jorgensen* v. *Squires,* 144 N. Y. 284; *Garrett* v. *Jones,* 65 Md. 260. There is nothing in the police regulations requiring gates not to swing across the sidewalk, nor in the building regulations, nor in the act of the legislative assembly (*supra*). There is no statute, police or building regulation which requires gates of parking fences to be hung so as to swing toward the building, and the order made April 26, 1884, is simply directory and does not have the force of law. The outward swinging of the gate or its want of repair constitutes neither defect in the sidewalk nor notice thereof.

5. Notice of a cause outside of the way which may produce a defect in the way is no notice of the defect itself. Notice to a town or city, which is bound to keep a way in repair, of a cause outside of the way, *which may produce a defect in the way,* is no notice of the defect itself, if produced; nor is the existence of such a cause for twenty-four hours previous to the occurrence of an injury suffered through the defect equivalent to the existence of the defect itself for that time. *Billings* v. *Worcester,* 102 Mass. 329.

6. If a lawful gate, such as this, may be an obstruction of the sidewalk or constitute a defect therein, then before the defendant can be held it must be shown that it knew that the gate was across the sidewalk under circumstances which constituted a defect or obstruction. While an object rightfully in the highway may constitute a defect by remaining there an unreasonable length of time, yet, in order to hold the inhabitants liable in such case *on the ground of notice,* they must not only know that the thing was there, but that it was there under circumstances by reason of which it is a defect in the highway. Thus, an eight-ton boiler in course of transportation along the highway was left there at six o'clock P. M. and allowed to remain until seven o'clock A. M. the next day, in consequence of which the plaintiff's horse took fright and ran away, injuring the plaintiff. On

these facts it was held that to render the inhabitants of the town liable for the accident it was necessary that they should have reasonable notice not only that the boiler was there, *but that it was unnecessarily in that position.*   Bartlett v. *Kittery,* 68 Me. 358; *Aylesworth* v. *C., R. I. & P. RR. Co.,* 30 Iowa, 459–461; *Daniels* v. *Potter,* 4 C. & P. 262.    Cellar door secured, but thrown open by a wrongdoer, tradesman not liable.

7. There is no evidence of notice, either actual or constructive, to the defendant that the gate swung across the sidewalk.    Such being the fact, the District had a right to suppose that the gate continued to swing toward the building line.    *Cleveland* v. *King,* 132 U. S. 295; 23 L. Ed. 337, 338; *District of Columbia* v. *Woodbury,* 136 U. S. 450; *Klatt* v. *Milwaukee,* 53 Wis. 196; *Doherty* v. *Waltham,* 4 Gray, 596.

Mr. Justice MORRIS delivered the opinion of the Court:

Four several propositions have been submitted on the part of the appellant.    They are these:

(1) That the grant of a permit by the authorities of the District of Columbia for the construction of the iron railing, whereof the offensive gate was a part, and whereby, as it is claimed, a part of the public thoroughfare was appropriated to private uses, was not warranted by law; and that the permanent occupation of part of the public thoroughfare which thereupon ensued was a nuisance in itself, the sanction of which by the authorities of the District rendered the latter liable, without further notice, for any injury resulting from the obstruction.

(2) That inasmuch as the construction and maintenance of this iron railing constituted in themselves a nuisance, the District of Columbia was bound, without any notice to its authorities, either actual or constructive, to see that the street was in safe condition.

(3) That the condition of the gate which caused the obstruction to the highway was dangerous in fact, and had

existed for such a length of time as that the authorities of the District, by a proper supervision of the public sidewalks, ought to have known such condition and ought to have applied a remedy to it.

(4) That the evidence tending to show that the gate in question had been permitted unduly to stand over the sidewalk and across it, and thereby to constitute an obstruction dangerous to life and limb, was such in quantity and character as required it to be submitted to the jury on the question of notice to the District.

With reference to the first and second of these propositions, which may be considered together, we find ourselves unable to accept them as well founded in law, in so far as they are applied to this case. Of course it may be conceded that it is not competent for the municipal authorities of the District of Columbia, by any regulation which they may undertake to make, in the absence of specific legislation for the purpose, to authorize any individual to appropriate any part of the public thoroughfare permanently to his own use, otherwise than is required by law and by general usage for the enjoyment of his own property adjacent thereto; and that the permanent occupation of any part of the public thoroughfare by an individual for his own exclusive use and benefit, whether with or without authority from the Commissioners of the District or other municipal agents of the District, would constitute a nuisance in itself. But no such condition is shown in the present case.

The record in the present case shows that permission was given by the authorities of the District to the owner of the Lincoln apartment house to fence in the adjacent portion of the sidewalk to an amount and in a manner consistent with the general parking system of the city of Washington. Now, no question is made as to the validity and propriety of this parking system, which adds so greatly to the beauty of our city and the general good and convenience of the municipality. On the contrary, counsel for appellant has only praise for the system. But the argument is that in the present instance the inclosure was for private use, and

not in accordance with the general parking system. Of this, however, there is no evidence whatever in the record. The permission given by the authorities was for an inclosure in accordance with the parking system. If the owner of the adjoining property abused the permission, and converted the inclosure to uses of his own inconsistent with the parking system, which there is nothing in the record to show, a different case might be presented. But, until the contrary is shown, and until it is made to appear that the authorities of the District have improperly sanctioned such an appropriation of the public thoroughfare for private use, the appellant's propositions in this regard have no application.

The appellant's third and fourth propositions raise the question whether there was testimony in the case sufficient to be submitted to the jury to show that the District of Columbia was chargeable with notice of the existence of the obstruction caused by the swinging gate, if obstruction in fact it was, and was therefore also chargeable with negligence for its failure to have the obstruction removed. And this question, in view of the peculiar character of the alleged obstruction, which was likely to appear and disappear, and thus perhaps escape observation by the authorities, is not entirely without difficulty.

Actual notice by the District is not claimed; there is no proof of any. What is claimed is constructive notice, which is as effectual, if sufficiently shown, to charge the municipal authorities as would be actual notice. As defined with regard to the District of Columbia by the Supreme Court of the United States in the case of *District of Columbia* v. *Woodbury,* 136 U. S. 450, with reference to a similar case of personal injury, constructive notice means —

" — that the District authorities, within the scope of their opportunities and money, being under an obligation to exercise a general supervision of the streets, and to keep themselves informed about their condition, if a street remains in a dangerous condition so long that the authorities could not help, in the exercise of ordinary care and diligence, knowing that fact, and did not know it because they failed to ex-

crcise proper vigilance, then the law imputes notice to them; in other words, they have notice in contemplation of law, and that is constructive notice."

And in this connection may also be cited the language of the Supreme Court of the United States in the case of *District of Columbia* v. *Armes,* 107 U. S. 519, where it was said, with reference to other accidents that had happened previously from the same obstruction by which the plaintiff in that case was injured, and as to their sufficiency to impute notice to the municipal authorities:

"As publicity was necessarily given to the accidents, they also tended to show that the dangerous character of the locality was brought to the attention of the authorities."

Our inquiry, then, is to ascertain whether there is testimony in the present case tending fairly to bring it within the scope of the enunciations of law thus made by the Supreme Court. Disregarding other evidence, we find the testimony in the record of a lady who resided in the house immediately adjoining the Lincoln apartment house to the west and who, according to the record, testified substantially as follows:

" For a long time it (the gate) was more out than any other way. It naturally seemed to fall that way. For a long time, I was going to say for as much as a year, I had been in the habit of seeing this gate swinging out or standing out over the sidewalk." And then her testimony proceeds thus in narrative form:

" That while seated in the bay window of her house and looking out of her window she had an unobstructed view of said west gate; that she saw numerous persons walk against said west gate; that they would make strong exclamations as they passed her house; that these accidents occurred a great many times prior to the accident of plaintiff; that she ran into said west gate twice, the first time on June 9, 1899, and the second time in October, 1899, and was hurt badly the second time; that most of the accidents she spoke of occurred in the daytime; that said west gate swung in and out, but it was more open to the outside that to the inside;

that nothing called attention to the said west gate in January, 1900; that she was hurt herself by said west gate in June and October, 1899; that she saw a number of persons walk against said west gate between October, 1899, and January, 1900.; that during the Christmas holidays of 1899 she saw a number of persons hurt by said west gate by walking against it."

This is testimony tending to show, if the jury gave full credit to it, that there was a dangerous obstruction in the public thoroughfare, that several persons before the plaintiff had been injured by it, and that it had existed so long that the defendant should have known its existence and applied a remedy to it. Of course, in connection with this testimony the jury should consider the peculiar character of the obstruction, the fact that it appeared at one time and disappeared at another, and that the agents of the District of Columbia might well have passed and repassed there many times a day and yet not have recognized the obstruction, unless their attention was specially directed to it. All this it is proper for the jury to consider; and we are of opinion that the testimony should have been submitted to them in order that they might determine from all the circumstances of the case whether the authorities of the District exercised a proper supervision in the premises, and with reasonable care and diligence could have known the existence of the obstruction, and failed to exercise proper vigilance. It appears to us that there was sufficient in this case to justify its submission to the jury, and that there was error in withdrawing it from them.

It follows that the judgment appealed from must be reversed, with costs; and that the cause must be remanded to the Supreme Court of the District of Columbia, with directions to award a new trial. And it is so ordered.

*Reversed.*