**D. C. TRANSIT SYSTEM, INC.,
Plaintiff,**

**v.**

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 80–1261.**

United States District Court,
District of Columbia.

Feb. 12, 1982.

Stanley J. Fineman, C. Francis Murphy, Louis P. Robbins, Wilkes & Artis, Washington, D. C., for plaintiff.

Nathan Dodell, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., Chief Judge.

D. C. Transit System, Inc., (D. C. Transit) brings this action against the United States to quiet title to 3,330 square feet of real property within the District of Columbia. The property in question was part of the Glover-Archbold Parkway (formerly Arizona Avenue), a dedicated street to which the District held title. The property lies between and abuts Lot 811 for 37 feet on the east and Lot 817 for 37 feet on the west. On December 17, 1968, the District of Columbia passed Resolution No. 6876, stating that the Glover-Archbold Parkway was closed. The closing action was recorded by the Surveyor for the District of Columbia on January 13, 1969. D. C. Transit, as owner of Lots 811 and 817, claims that it became the owner of the portion of the former Parkway abutting those lots by operation of law when the Parkway closed. Section 7–401 of the District of Columbia Code, entitled "Closings authorized; dispositions of property," provides:

> The Council of the District of Columbia is authorized to close any street, road, highway, or alley, . . . in the District of Columbia . . . the title to the land . . . within the public space so closed to revert to the owners of the abutting property. . . .

The United States claims title to the same land pursuant to an order of the Board of Commissioners of the District of Columbia (the Board).[1] The Board's order, dated February 9, 1967, states that title to the closed Parkway "shall revert to the United States of America (National Park Service)." The Board's action in closing the street and granting title to the United States was taken pursuant to a May 1966 agreement between the District and the Park Service, by which the District agreed to transfer its right of way in the former Arizona Avenue to the Park Service, and to take all actions (including closing the street) to do so immediately. The matter is before the Court now on cross-motions for summary judgment. Before the valid title issue is reached, the jurisdictional question of whether D. C. Transit's suit is barred by the statute of limitations, also argued by both parties in their motions for summary judgment, must be resolved. *See Knapp v. United States*, 636 F.2d 279 (10th Cir. 1980).

■ The United States has waived sovereign immunity in civil actions to quiet title to property in which the United States claims an interest, 28 U.S.C. § 2409a (1976), and has vested exclusive original jurisdiction to hear such actions in the district courts, 28 U.S.C. § 1346(f) (1976). The waiver of immunity in section 2409a was expressly conditioned, however, upon the statute of limitations stated therein:

> Any civil action under this section shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.

28 U.S.C. § 2409a(f) (1976). The limitation set forth in section 2409a is jurisdictional, *e.g., Park County v. United States*, 454 F.Supp. 1, 2 (D.Mont.1978), *aff'd Park County Association v. United States*, 626 F.2d 718 (9th Cir. 1980), and timeliness is therefore a prerequisite to suit under the section. *See, e.g., Grosz v. Andrus*, 556 F.2d 972, 975 (9th Cir. 1977). Moreover, because it is a condition to suit against the sovereign, the limitation must be strictly construed in favor of the Government. *E.g., Bradford v. United States*, 651 F.2d 700, 711 (10th Cir. 1981); *Stubbs v. United States*, 620 F.2d 775, 779 (10th Cir. 1980); *Knapp v. United States*, 636 F.2d at 282; *City and County of Denver v. Bergland*, 517 F.Supp. 155, 175 (D.Col.1981).[2]

The complaint in this case was filed on May 19, 1980. If twelve years have passed from the time plaintiff discovered, or should have discovered, the interest of the United States, the plaintiff is out of court. *Bradford v. United States*, 651 F.2d at 710 (dissenting opinion). Since both parties have moved for summary judgment on this issue, neither may prevail unless, on the basis of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits before it, the Court is convinced that there is no genuine issue as to any material fact, and that one party rather than the other is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). D. C. Transit has stated it had no *actual* notice of the Park Service's interest until well within the filing period. The United States, although it questions this assertion, has presented no evidence controverting it. The statute and its legislative history clearly state that an action will also be deemed to have accrued at any time plaintiff *should have known* of the claim of the United States. *See* 1972 U.S.Code Cong. & Admin.

---

1. Until November 3, 1967, the District of Columbia Board of Commissioners was vested with the authority to set aside space in the streets for park purposes and to close streets, roads, highways, and alleys. Section 402(179) of Reorganization Plan No. 3 of 1967 (Plan) transferred the function of setting aside space in streets and avenues for park purposes to the District of Columbia City Council (City Coun-

cil), as provided in section 406 of the Plan. Section 402(168) of the Plan transferred the Board's function of closing any street to the Council.

2. Although it was enacted in 1972, the twelve-year bar of section 2409a has been held to apply retroactively. *See, e.g., Stubbs v. United States*, 620 F.2d 775, 780 (10th Cir. 1980).

News 4547, 4552–53.[3] On the question of whether D. C. Transit had constructive notice of the United States' claim to the property, both parties have submitted statements of facts, admissions, interrogatories, affidavits and legal arguments.

Section 2409a does not require that the plaintiff have knowledge of the full contours of the Government's claim before the action accrues. Rather, all that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff. *United States v. Bedford Associates*, 657 F.2d 1300, 1316 & n.16 (2d Cir. 1981); *Knapp v. United States*, 636 F.2d at 283. Even where the Government's interest in a plaintiff's property is based on a null deed, such governmental interest, even without legal title, constitutes a cloud on plaintiff's title sufficient to render the notice provisions of section 2409a(f) satisfied. *See, Knapp v. United States*, 636 F.2d at 283; *Stubbs v. United States*, 620 F.2d at 781. *Cf. Peterson v. Morton*, 465 F.Supp. 986, 996 (D.Nev.1979). The statute speaks only of disputes to title of real property in which the United States claims an *interest*. *E.g., Hatter v. United States*, 402 F.Supp. 1192, 1195 (E.D.Cal. 1975). In this case the National Park Service claims rights of reversion to the land within the former Glover-Archbold Parkway as a result of its agreement with the District in May of 1966. The Park Service requested the closing of the Parkway in connection with the development of the Park, and a public hearing was held to consider this closing, as required by section 7–402 of the D.C.Code. A notice was sent to all owners of property abutting areas proposed to be closed, stating that a public hearing would be held on December 8, 1966,

> to determine the question as to any property rights which may be affected or as to the equity, justice or advisability of the closings . . . .

The notice listed Glover-Archbold Parkway as one of the properties proposed to be closed, and continued,

> As owner of the property abutting on the area proposed to be closed, you are hereby advised of your privilege to be present at said hearing, in person or by representative, for the purpose of stating objections, if any, to the closing adjacent to your land.
>
> Maps showing said closings will be exhibited at said hearing, and the Commissioners will consider any suggestions or protests concerning the same which may be offered by any party interested.

In further fulfillment of the requirements of section 7–402, a similar notice was published in a daily newspaper of general circulation for fourteen days before the public hearing. The newspaper notice stated:

> Maps showing street and alley areas proposed to be closed are on file in Surveyor's Office, D. C., Rm 405, Dist. Bldg., Wash., D. C. These maps may be examined by interested parties during business hours prior to hearing. Said maps will also be displayed at hearing and the Commissioners will consider any suggestions or protests concerning proposed street and alley closing, as shown on aforementioned maps.

The maps displayed at the public hearing on December 8, 1966, together with testimony by Park Service officials at the hearing, disclosed the Park Service's claim to reversion rights to the land within the Parkway upon its closing. The Park Service's interest, whether or not it was valid, and even at that early date, constituted a cloud upon D. C. Transit's purported interest in the land, sufficient to render the notice provision of

---

**3.** D. C. Transit claims it had no actual knowledge of the United States' claim until March of 1978, and asserts that the United States had no official claim to the property until January 13, 1969, when the plat noting reversion to the National Park Service was recorded. Moreover, although the company admits that the claim was officially recorded, it is D. C. Transit's position that the United States never had, and still does not have, valid title to the land. The Government takes the position that the District had authority to convey title to the property under section 8–108 of the D.C.Code and that the conveyance was effective as of February 9, 1967, by operation of law under section 7–401. (Section 8–108 is reclassified as section 8–104 in the 1981 edition of the D.C. Code.)

section 2409a satisfied. *See, e.g., Bradford v. United States*, 651 F.2d at 711 (dissenting opinion). The only question remaining is whether D. C. Transit had constructive notice of the Park Service's interest at any time before May 19, 1968.

■ Although section 2409a is to be interpreted according to federal law, *see, e.g., United States v. Standard Oil Co.*, 332 U.S. 301, 309–10, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), the legislative history of section 2409a indicates that state law should be looked to where a question is not covered by federal law. *United States v. Bedford Associates*, 491 F.Supp. 848, 849 (S.D.N.Y. 1980) (citing 1972 U.S.Code Cong. & Admin. News at 4555), *aff'd in part and rev'd in part on other grounds*, 657 F.2d 1300, 1316 & n.16 (2d Cir. 1981). With regard to constructive notice under section 2409a, the words "should have known" as used in the section have been held to import a test of "reasonableness," *Amoco Production Co. v. United States*, 619 F.2d 1383, 1388 (10th Cir. 1980); however, a court must look first to state law to decide whether a plaintiff had constructive notice under the section on a particular set of facts. *Id.* at 1387–88. *See also King v. United States*, 585 F.2d 1213 (4th Cir. 1978). It is accepted that local practices and local rules are particularly indicative of whether a party should have known a relevant fact. 619 F.2d at 1387. In addition, federal courts may properly look to state law as an aid in determining the application of statutory language to specific facts. *See, e.g., Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957).

■ The law of the District of Columbia has recognized and applied the concept of constructive notice as being "as effectual as actual notice." *Domer v. District of Columbia*, 21 App.D.C. 284 (1903). Moreover, the courts of this jurisdiction have interpreted the concept broadly. In the case of *United States Trust Co. v. David*, 36 App.D.C. 549, 556 (1911), a bank was denied relief after it mistakenly paid a receiver in bankruptcy, on the basis of the Court's holding that the bank was chargeable with constructive notice of an equity bill cited in the order appointing the receiver, of which the bank had actual notice. Had counsel for the bank read the bill cited in the order with which it was served, the bank would have been advised not to pay the receiver. *Id.* In making its holding the Court applied the general rules that "a paper which expressly refers to another paper within the power of the party gives notice of the contents of that other paper," *Livingston v. Maryland Insurance Co.*, 11 U.S. (7 Cranch) 506, 537, 3 L.Ed. 421 (1813), and that "whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it." *United States Trust Co. v. David*, 36 App.D.C. at 557 (citing *Wood v. Carpenter*, 101 U.S. 135, 25 L.Ed. 807 (1879)).

■ These rules are equally applicable on the facts of the instant case. D. C. Transit has admitted to the following assertions of fact made by the defendant:

1. On November 18, 1966, plaintiff received a copy of a notice sent by the District Government to it via registered mail which notified plaintiff that the District of Columbia would hold a public hearing on December 8, 1966, in the District Building to determine any property rights that may be affected or as to the equity, justice or advisability of closing certain streets and alleys in the District of Columbia including Glover-Archbold Parkway (Arizona Avenue).

2. In November and December, 1966, the District Government published an advertisement that appeared in one or more newspapers of general circulation in the District of Columbia which notified any interested property owners that the District would conduct a public hearing on December 8, 1966, to determine any property rights which may be affected or as to the advisability of closing certain streets and alleys including Glover-Archbold Parkway (Arizona Avenue).

3. Plaintiff knew, prior to the date of the hearing, that a public hearing would take place on December 8, 1966, relating to the closing of the Glover-Archbold Parkway (Arizona Avenue).

4. At the public hearing, an attorney for a property owner appeared and offered a statement objecting to the closing of a portion of Arizona Avenue which abutted his client's property. The attorney speaking on behalf of his client stated:

· Mrs. Eckles [the property owner] objects to the proposed closing of that portion of Glover-Archbold Parkway situated to the north of the south ninety-foot line of Upton Street. *We are advised that the National Park Service intends to use the land as a park,* . . . . [Emphasis added in defendant's Statement of Material Facts as to Which There is No Genuine Issue.]

5. On January 3, 1967, the District Government considered the memoranda of the Hearing Officer and of the Acting Surveyor, dated December 27, 1966, and approved a closing order drafted by the Acting D. C. Surveyor for District rights of way[5] including Arizona Avenue, ordered notice and publication of such order and ordered that such matter be forwarded to the National Capital Planning Commission for recommendation.

6. On January 9, 1967, plaintiff received notice via registered mail that the District of Columbia had enacted an order which, referring to the proceedings of the public hearing held December 8, 1966, described the closing of the Glover-Archbold Parkway (Arizona Avenue). The notice also stated:

Any and all parties interested must file objections in writing, if any to said closings, or as to any item or items providing for the closings, listed above, within the 30-day period prior to February 9, 1967,

otherwise said closing shall become effective on and after that date, in accordance with the provisions of said Act . . . .

7. In January of 1967, the District Government published notice in one or more newspapers of general circulation in the District of Columbia substantially identical with the notice received by plaintiff on January 9, 1967.

8. Other interested property owners did file objections to the proposed closing of portions of the Glover-Archbold Parkway. Plaintiff did not file an objection or comment or other written document after receipt of the January 9, 1967 notice.

9. On December 17, 1968, the District of Columbia City Council passed a resolution which found that "the closing of the right of way the District of Columbia owns in the Glover-Archbold Park, which has the effect of automatically reverting the title to the National Park Service, is advantageous and desirable." The Council noted that a public hearing had been held; that the Commissioners had, on January 3, 1967, prepared an order approving the closing; and that there was proper publication of the Commissioners' Order. The Council resolved that the right of way be closed and that all remaining steps be taken to effectuate the closing.

10. On January 13, 1969, a plat of the street closing and transfer was recorded in the Surveyor's Office of the District of Columbia.

11. In the period of 1966 through 1969, plaintiff corporation had a real estate and legal department. Plaintiff's real estate department was charged with the responsibility for maintaining plaintiff's records of land ownership.

Documentary evidence made part of the record supports the above factual assertions made by the United States and admitted to

---

**5.** The documents filed and the pleadings on both sides in this case employ the term "right of way" in its "unusual sense," *see* Black's Law Dictionary 1489 (4th ed. 1951), applying it to mean the District had full title in fee-simple to the lands used for the right of way. In this case the dedicated right of way is 100 feet wide, and is recorded in the D. C. Surveyor's Office in Book-County 9, page 48, entitled "Avenue along Foundry Branch from Loughboro Road to Canal Road, D. C.," and dated March 1893.

by plaintiff.[6] Accordingly, the Court agrees with the parties that these assertions are true statements of material facts. On the basis of these facts, applying the law of the District of Columbia and with the "test of reasonableness" in mind, the Court finds that D. C. Transit had constructive notice within the meaning of section 2409a of the United States' interest in the land in question as early as December 8, 1966, when the hearing was held regarding the proposed closing and its effects.

Under District of Columbia as well as federal law, see *Amoco Production Co. v. United States*, 619 F.2d at 1388, D. C. Transit plainly "should have known" of the United States' adverse interest long before it claims to have received actual notice, for it is only reasonable to expect that someone from the corporation's legal or real estate department would go to the hearing, read the closing order, or look at the plats recorded and on file in the Surveyor's Office, all of which disclosed the Park Service's claim more than twelve years before D. C. Transit filed this action. *See Wood v. Carpenter*, 101 U.S. 135, 25 L.Ed. 807 (1879); *Livingston v. Maryland Insurance Co.*, 11 U.S. (7 Cranch) at 537; *United States Trust Co. v. David*, 36 App.D.C. at 556. Adding even greater weight to this conclusion is the uncontroverted fact that several other citizens who received notices or read them in the paper did go to the hearing, did investigate the maps on display, and did make objections (all of which were resolved) to the closing of the Parkway. The Court of Appeals for this Circuit, dismissing a suit to reissue a supposedly inaccurate patent, cited the rule that "the law imputes knowledge, when opportunity and interest, combined with reasonable care, would necessarily impute it." *Booth Fisheries Corp. v. Coe*, 114 F.2d 462, 463 n.3 (1940) (citing *Ives v. Sargent*, 119 U.S. 652, 661, 7 S.Ct. 436, 441, 30 L.Ed. 544 (1887)). In a later case the Municipal Court of Appeals for the District of Columbia stated: "The knowledge

of facts and circumstances reasonably sufficient to put a person of ordinary prudence on inquiry which, if pursued with proper diligence, would lead to the discovery of the actual condition of the title, is equivalent to knowledge direct and certain." *Rosenthal v. Kolb*, 97 A.2d 925, 927 (D.C.1953). Very recently, the Court of Appeals applied a strict construction of constructive notice once again, refusing to extend the filing period for a petition with the FCC, even though the appellant claimed it was misled as to the date the opposition's application would be filed. *Washington Association for Television and Children v. Federal Communications Commission*, 665 F.2d 1264 (D.C. Cir.1981). The Court said explicitly that plaintiff, "an organization represented by counsel intimately familiar with the notice procedures employed .... cannot be heard to say that its failure to learn of the application was justified. *Washington Association for Television and Children v. FCC*, 665 F.2d 1264 at 1271 & n.15 (D.C.Cir.1981).

In this case, the hearing, the maps showing the land and approval for closing, all interim proceedings, and the eventual order closing the property and transferring title to the Park Service were all publicly noted according to established procedures. D. C. Transit, having admittedly received formal notice which made reference to these public documents and procedures, was thereby put on inquiry and had the opportunity to investigate and guard its interests. Having waited more than twelve years after that time to file this lawsuit, D. C. Transit's claim is now barred by the statute of limitations in section 2409a(f). On the basis of the factual findings, admitted to by plaintiff and fully set forth herein, the United States' motion for summary judgment will be granted.

An appropriate order follows.

---

6. The order referred to in Paragraph 6 above, acknowledging reversion "to the UNITED STATES OF AMERICA (National Park Service)" was noted in full on the plat on file and available for public inspection in the D. C. Surveyor's Office, with the date of February 9, 1967.