Pursuant to the memorandum filed herein on this date,

IT IS HEREBY ORDERED that defendants' motion for summary judgment on plaintiff's claim against defendants is granted.

Defendants have established that any limitation on plaintiff's expression of her views was content-neutral. Plaintiff, in her response to defendants' motion for summary judgment, has failed to show that her speech was in any way limited for other than content-neutral reasons.

Accordingly, judgment on plaintiff's complaint is entered in favor of defendants.

**AMOCO PRODUCTION CO. et al., Plaintiffs,**

v.

**The UNITED STATES of America et al., Defendants.**

**No. C–76–0019A.**

United States District Court,
D. Utah, C.D.

July 1, 1987.

Alan L. Sullivan, Samuel O. Gaufin, of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for plaintiffs.

Glen Dawson, Asst. U.S. Atty., Salt Lake City, Utah, for Utah.

Jacques B. Gelin, Robert L. Klarquist, Washington, D.C., for Appellate Section, Land & Natural Resources Div., Dept. of Justice.

Claron C. Spencer, Richard E. Danley, Jr., Salt Lake City, Utah, for defendant Bass Enterprises Production Co.

William Cayias, Cayias, Livingston & Smith, Salt Lake City, Utah, for defendant Newton Sheep Co.

Scott E. Isaacson, David K. Isom, Davis, Graham & Stubbs, Salt Lake City, Utah, for defendant American Quasar.

John W. Horsley, Moyle & Draper, Salt Lake City, Utah, for defendants Bow Balley, Anderson, and Lasrich.

## MEMORANDUM OPINION AND ORDER ON PREJUDGMENT INTEREST

ALDON J. ANDERSON, Senior District Judge.

This accounting arises out of an action to quiet title to the mineral rights in property located in Summit County, Utah. In 1942, the Federal Farm Mortgage Corporation (FFMC) conveyed title in this property to Hyrum and Florence Newton. The issue at trial was whether the FFMC had reserved for itself a one-half mineral interest in the land. The United States, as the FFMC's successor-in-interest, is a defendant in the action and the other defendants—Flying Diamond, Bow Valley, Bass Enterprises, John R. Anderson and Beverly Lasrich—are currently the United States' lessees. They claim that the FFMC retained its mineral interest in the property. Plaintiffs Amoco, Champlin and Sun Oil are the lessees of the Newton's successor-in-interest. Claiming that no mineral interest was reserved by the FFMC, they brought suit to quiet title to the mineral rights.

Defendant American Quasar is a party to this action because it operated some gas wells on the disputed land from 1975 to 1985 and has deposited revenues from these wells with the Clerk of Court pending resolution of the title dispute. American Quasar's liability for interest on these revenues is itself in dispute. At trial on the title issue, this court found for defendants who now seek an accounting for royalties received and withheld by various parties over the years.[1] They also request prejudgment interest on the withheld royalties at a rate approximating that available in financial markets during the years in question. Plaintiffs, on the other hand, claim that defendants are entitled to prejudgment interest at a rate no higher than the Utah statutory rate of six percent.

### I. PREJUDGMENT INTEREST

It is well-established that where a federal court has federal question jurisdic-

---

1. This court entered its Interim Decree resolving the title dispute on September 6, 1985. Prior opinions regarding the parties' motions for summary judgment are recorded at 455 F.Supp. 46 (D.Utah 1977), *rev'd and remanded,* 619 F.2d 1383 (10th Cir.1980).

tion under 28 U.S.C. § 1331 and where the federal statute governing the substantive law is silent, the rate of prejudgment interest is discretionary with the trial court.[2] In *United States v. Dollar Rent A Car Systems, Inc.*, 712 F.2d 938, 941 (4th Cir. 1983), the court stated that a court is not bound by the statutory interest rate of the forum state in a federal question case. The present action is clearly a federal question case since it is brought under the Federal Quiet Title Act and the Circuit Court has already established in prior proceedings that federal law governs its resolution. *Amoco Production Co. v. United States*, 619 F.2d 1383, 1387 (10th Cir.1980). This court therefore should apply federal common law in setting the prejudgment interest rate. It is true that courts deciding an issue under the Federal Quiet Title Act should refer to state law where federal law is silent. *D.C. Transit System, Inc. v. United States*, 531 F.Supp. 808, 812 (D.D.C.1982), *rev'd on other grounds*, 717 F.2d 1438 (D.C.Cir.1984). Since this case presents a federal question, however, the cases clearly mandate the development of federal common law in the area. Particularly since the United States is itself a party and one of the defendants who will receive the prejudgment interest, it would make little sense to apply state law.

Plaintiffs assert that the court should apply the Utah statutory interest rate of six percent. Their principle argument is that the availability of prejudgment interest should be determined by the law of the forum which governs the substantive issues of the case. *Commercial Standard Insurance Co. v. Bryce Street Apartments, LTD.*, 703 F.2d 904, 909 (5th Cir. 1983). The *Bryce* court relied on *Illinois Central Railroad Co. v. Texas Eastern Transmission Corp.*, 551 F.2d 943, 944 (5th Cir.1977) which held that Congress, by being silent on the question of prejudgment interest in 28 U.S.C. § 1961,[3] contemplated that courts faced with the question of the availability of prejudgment interest should refer to the law which governs the substantive liability. Plaintiffs argue that the apposite law is that of Utah since resolution of the title disputes in this case was determined by state property law. The argument then follows that since Utah law governs on the availability of prejudgment interest, it should also govern on the proper rate of that interest. In Utah the legal rate of interest for disputes arising before 1981 was set at six percent. Utah Code Annotated 15–1–1.[4]

The court in *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 989 (6th Cir.1982), however, rejected the reasoning of *Illinois Central*, stating: "We agree that Section 1961 does not by its silence bar the awarding of prejudgment interest in cases whose jurisdiction is grounded in the resolution of a federal question." The court in *Louisiana & Arkansas Railway Co. v. Export Drum Co.*, 359 F.2d 311, 317 (5th Cir.1966) also held that, despite the silence of 1961, prejudgment interest should be awarded where it is conducive to effecting national policy.

As has been discussed, this case presents a federal question through application of the Federal Quiet Title Act. Any provision in the Act granting or denying prejudgment interest, therefore, would be dispositive as a matter of federal law. If the Act were silent on a particular issue the court could properly refer to state law for resolution of the issue, even though federal law

---

**2.** *Orshan v. Macchiarola*, 629 F.Supp. 1014, 1017 (E.D.N.Y.1986); *Equal Employment Opportunity Comm'n v. County of Erie*, 751 F.2d 79, 81 (2d Cir.1984); *Equal Employment Opportunity Comm'n v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir.1984); *Citizens Savings Bank v. Bell*, 605 F.Supp. 1033, 1047 (D.R.I.1985); *Donovan v. Freeway Construction Co.*, 551 F.Supp. 869, 880 (D.R.I.1982).

**3.** Section 1961 is the statute dealing with judgment interest. It provides: "Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to [that on the most recent] auction of fity-two week United States Treasury bills ..."

**4.** U.C.A. 15–1–1 provides: "Except when parties to a lawful contract agree on a specified rate of interest, the legal rate of interest for the loan or forbearance of any money, goods or chose in action shall be 6% per annum."

would still control. *Amoco Production Co.,* 619 F.2d at 1387; *D.C. Transit,* 531 F.Supp. at 812. Since Congress and the courts have expressed a federal policy preference on the present issue however, there is no need to look to state law. In *Vincent Murphy Chevrolet Co. Inc. v. United States,* 766 F.2d 449, 451 (10th Cir.1985) the court said that because the Federal Quiet Title Act is a federal statute, it

> "must be interpreted in accordance with principles of federal law, and while '[f]ederal courts may properly look to state law as an aid in determining the application of statutory language to specific facts,' ... such state law should be '[c]ompatible with the purpose of [the legislation so as] to find the rule that will best effectuate the federal policy.' "

In the present case, we have also the benefit of Congress' expressed intention regarding royalties owed to the United States. The Oil and Gas Royalties Management Act requires that interest on late payments and underpayments of royalties is to be set at a rate three points higher than the short term federal rate.[5] The three point penalty aside, Congress clearly intended that the government should receive the full amount of the royalties due plus a market rate of interest on any withheld royalties.

This preference for awarding a compensatory rate of interest as a matter of policy has found support in the Tenth Circuit's holding in *Davis Cattle Co. Inc. v. Great Western Sugar Co.,* 544 F.2d 436, 441 (10th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977), and in two recent Supreme Court cases. The court in *Davis* declared that "just compensation for the victim is a fundamental principle of damages, and that where money has been wrongfully withheld, it is only

fair that the victim receive interest on the money thus withheld."

In *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983), the Supreme Court rejected the argument that a statute awarding damages to victims of patent infringement was merely a codification of a prior line of cases restricting prejudgment interest to exceptional situations. The Court held that "adequate compensation" under the statute required awarding prejudgment interest. The Court affirmed this statement of policy in *West Virginia v. United States,* — U.S. —, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987), when it declared that "prejudgment interest is an element of complete compensation."

Other courts have also seen the object and the measure of prejudgment interest to be victim compensation. The court in *Norte & Co. v. Huffines,* 416 F.2d 1189, 1191 (2d Cir.1969), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970), stated that the prejudgment interest award should be compensatory and based upon fundamental considerations of fairness. The court in *Hollenbeck v. Falstaff Brewing Corp.,* 605 F.Supp. 421, 435 (E.D.Mo. 1984), *aff'd,* 780 F.2d 20 (8th Cir.1985), said that the most appropriate interest rate would be that which most equitably compensates the prevailing party for the loss of use of the money recovered in the action. In the present case, the rate should be set at a level which will compensate defendants for the loss of use of the recovered royalty payments while the funds were in plaintiffs' possession. The rate should reflect the return defendants could have obtained on the money in financial markets during that period.

■ The court finds the appropriate rate to be the fifty-two week Treasury Bill rate

---

5. The Act provides: "In case of oil and gas leases where royalty payments are not received [when] due, or are less than the amount due, the Secretary shall charge interest on such late payments or underpayments at the rate applicable under section 6621 of Title 26." 30 U.S.C. § 1721(a).

   The three additional points represent a penalty for late payment. The legislative history of

the Act explained: "Such interest penalties are deemed part of royalty payments [and are designed] to remove the incentives such persons may have to hold the money owed and invest it rather than pay it on time." H.R.Rep. No. 859, 97th Cong., 2d Sess. 36, reprinted in 1982 U.S. Code Cong. & Admin.News 4268, 4290.

prescribed by Congress for judgment interest in 28 U.S.C. § 1961.[6] In setting this standard, Congress was motivated by the same concerns that face this court, namely, full compensation to those who have been wrongfully deprived of funds. If for no other reason, this particular measure of the market rate for prejudgment interest is attractive because it makes the prejudgment rate consistent with the post-judgment rate.

Numerous cases granting prejudgment interest at the market rate have used the IRS formulation in 26 U.S.C. § 6621. As already noted, the Oil and Gas Royalties Management Act itself refers to this measure. As also noted, however, this rate includes a three percent penalty for late payment. The court feels that no such penalty is appropriate in the present case since plaintiffs withheld the money in the course of a good faith dispute over title to the lands.

## II. DEPOSITS WITH THE CLERK

When the title dispute arose, American Quasar, as operator of certain gas wells, began withholding the revenues from those wells pending resolution of the dispute. Pursuant to a Stipulation and Order dated February 17, 1982, American Quasar deposited $329,878.89 with the Clerk of Court. From February 1982 until it ceased to be the gas operator in April 1985, American Quasar claims to have regularly deposited newly earned revenues with the Clerk who has invested and reinvested all deposited funds in 90 day Treasury bills.

Defendants Bow Valley, Anderson and Lasrich claim that American Quasar has deposited with the Clerk less than half of the revenues withheld and insist that American Quasar is obliged to pay interest on all withheld funds. American Quasar denies that it has not paid all royalties to the Clerk and also argues that deposits with the Clerk pursuant to the Stipulation and Order preclude charging it with interest.

■ Having reviewed the arguments which the parties have proffered in response to the Interim Decree, it is apparent to the court that unresolved questions of fact remain regarding both the amounts which American Quasar has deposited with the Clerk and American Quasar's contentions as to the terms of various division orders, trade practices and the applicability of equitable interpleader and waiver. The court is in no position to make factual determinations on these matters without an evidentiary hearing, but understands, based on the parties' representations at oral argument, that they likely will be able to resolve these disputes and to submit to the court for its approval a stipulated order settling these issues. As to the funds which have been deposited with the Clerk, the court again observes that both prejudgment and postjudgment interest are compensatory in character and that the defendants have a right to interest on any royalties improperly withheld from them. Funds deposited with the Clerk have been earning interest at the 90 day Treasury bill rate. This accumulated interest will repose in the defendants and American Quasar is clearly not required to pay interest on funds it has not possessed. To the extent that American Quasar has failed to deposit with the Clerk any of the withheld royalties, however, it is liable to the other defendants for interest at the fifty-two week Treasury bill rate. Failure to hold American Quasar so responsible would allow it a windfall and inadquately compensate the other defendants.

IT IS THEREFORE ORDERED that the parties shall compute the rate of prejudgment interest owed on the basis of the fifty-two week Treasury bill rate. No interest is owed on any funds during any time such funds were deposited with the Clerk of Court.

6. In 1982, Congress amended section 1961 to prescribe the Treasury bill rate. Formerly, section 1961 had referred courts to the state's statutory rate of interest.