Justice SOTOMAYOR, dissenting.
*111 The Court bases today's holding almost entirely on Great Northern R. Co. v. United States, 315 U.S. 262, 271, 62 S.Ct. 529, 86 L.Ed. 836 (1942), and its conclusion that the General Railroad Right-of-Way Act of 1875 granted "only an easement, and not a fee," to a railroad possessing a right of way. The Court errs, however, in two ways. First, it does not meaningfully grapple with prior cases- Northern Pacific R. Co. v. Townsend, 190 U.S. 267, 271, 23 S.Ct. 671, 47 L.Ed. 1044 (1903), and Rio Grande Western R. Co. v. Stringham, 239 U.S. 44, 47, 36 S.Ct. 5, 60 L.Ed. 136 (1915) -that expressly concluded that the United States retained a reversionary interest in railroad rights of way. To the extent the Court regards Great Northern as having abrogated these precedents, it places on Great Northern more weight than that case will bear. Second, the Court relies on " basic common law principles," ante, at 1266, without recognizing that courts have long treated railroad rights of way as sui generis property rights not governed by the ordinary common-law regime. Because Townsend and Stringham largely dictate the conclusion that the Government retained a reversionary interest when it granted the right of way at issue, and because any ambiguity in land grants "is to be resolved favorably to a sovereign grantor," Great Northern, 315 U.S., at 272, 62 S.Ct. 529, I respectfully dissent.
I
Over a century ago, this Court held that a right of way granted to a railroad by a pre-1871 Act of Congress included "an implied condition of reverter" to the Government if the right of way ceased to be used "for the purpose for which it was granted." Northern Pacific R. Co. v. Townsend, 190 U.S. 267, 271, 23 S.Ct. 671, 47 L.Ed. 1044 (1903). The question in Townsend was whether individual homesteaders could acquire title by adverse possession to land granted by the United States as a railroad right of way. The Court held that they could not, because "the land forming the right of way was not granted with the intent that it might be absolutely disposed of at the volition of the company."
*112 Ibid. "On the contrary," the Court held, "the grant was explicitly stated to be for a designated purpose, one which negated the existence of the power to voluntarily alienate the right of way or any portion thereof." Ibid. Hence the "implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted." Ibid. In essence, the Court held, "the grant was of a limited fee," ibid. -commonly known as a defeasible fee, see Restatement (First) of Property § 16 (1936) -rather than fee simple. Thus, if the railroad were to abandon its use of the right of way, the property would revert to the United States.
The Court later confirmed in Rio Grande Western R. Co. v. Stringham, 239 U.S. 44, 47, 36 S.Ct. 5, 60 L.Ed. 136 (1915), that this rule applies not just to pre-1871 land grants to railroads, but also to rights of way granted under the General Railroad Right-of-Way Act-the Act under which the United States granted the right of way at issue in this case. That case stated that rights of way granted under the 1875 Act are "made on an implied condition of reverter in the event that the company ceases to use or retain the land *1270 for the purposes for which it is granted." Ibid. Indeed, Stringham sustained the validity of the reverter where, as here, the United States patented the adjacent land "subject to [the] right of way." Id., at 46, 36 S.Ct. 5. If Townsend and Stringham remain good law on that point, then this case should be resolved in the Government's favor.
II
A
This case therefore turns on whether, as the majority asserts, Great Northern "disavowed" Townsend and Stringham as to the question whether the United States retained a reversionary interest in the right of way. Ante, at 1264 - 1265. Great Northern did no such thing. Nor could it have, for the Court did not have occasion to consider that question.
*113 In Great Northern , a railroad sought to drill for oil beneath the surface of a right of way granted under the 1875 Act. We held that the railroad had no right to drill, because the United States did not convey the underlying oil and minerals when it granted the railroad a right of way. In language on which the Court relies heavily, Great Northern opined that the 1875 Act granted the railroad "only an easement, and not a fee." 315 U.S., at 271, 62 S.Ct. 529.
But that language does not logically lead to the place at which the majority ultimately arrives. All that Great Northern held-all, at least, that was necessary to its ruling-was that the right of way did not confer one particular attribute of fee title. Specifically, the Court held, the right of way did not confer the right to exploit subterranean resources, because the 1875 Act could not have made clearer that the right of way extended only to surface lands: It provided that after the recordation of a right of way, "all ... lands over which such right of way shall pass shall be disposed of subject to such right of way." Ibid. (second emphasis and internal quotation marks omitted). But the Court did not hold that the right of way failed to confer any sticks in the proverbial bundle of rights generally associated with fee title. Cf. B. Cardozo, The Paradoxes of Legal Science 129 (1928) (reprint 2000); United States v. Craft, 535 U.S. 274, 278, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). And this case concerns an attribute of fee title-defeasibility-that no party contends was at issue in Great Northern .
The majority places heavy emphasis on Great Northern 's characterization of rights of way under the 1875 Act as "easements," rather than "limited fees." When an easement is abandoned, the majority reasons, it is extinguished; in effect, it reverts to the owner of the underlying estate, rather than to its original grantor. Ante, at 1265 - 1266. For that reason, the majority concludes, "basic common law principles" require us to retreat from our prior holdings that railroad rights of way entail an implied possibility of reverter *114 to the original grantor-the United States-should the right of way cease to be used by a railroad for its intended purpose. Ante, at 1265 - 1266.
But federal and state decisions in this area have not historically depended on "basic common law principles." To the contrary, this Court and others have long recognized that in the context of railroad rights of way, traditional property terms like "fee" and "easement" do not neatly track common-law definitions. In Stringham, the Court articulated ways in which rights of ways bear attributes both of easements and fees, explaining that "[t]he right of way granted by [the 1875 Act] and similar acts is neither a mere easement, *1271 nor a fee simple absolute." 239 U.S., at 47, 36 S.Ct. 5. In New Mexico v. United States Trust Co., 172 U.S. 171, 182-183, 19 S.Ct. 128, 43 L.Ed. 407 (1898), the Court further observed that even if a particular right of way granted by the United States was an "easement," then it was "surely more than an ordinary easement" because it had "attributes of the fee" like exclusive use and possession. See also Western Union Telegraph Co. v. Pennsylvania R. Co., 195 U.S. 540, 569-570, 25 S.Ct. 133, 49 L.Ed. 312 (1904) (reaffirming this view). Earlier, in 1854, the Massachusetts Supreme Judicial Court had explained that although the right acquired by a railroad was "technically an easement," it "require[d] for its enjoyment a use of the land permanent in its nature and practically exclusive." Hazen v. Boston and Me. R. Co., 68 Mass. 574, 580 (1854). And the Iowa Supreme Court, in a late 19th-century opinion, observed that "[t]he easement" in question "is not that spoken of in the old law books, but is peculiar to the use of a railroad." Smith v. Hall, 103 Iowa 95, 96, 72 N.W. 427, 428 (1897).
Today's opinion dispenses with these teachings. Although the majority canvasses the special role railroads played in the development of our Nation, it concludes that we are bound by the common-law definitions that apply to more typical property. In doing so, it ignores the sui generis nature of railroad rights of way. That Great Northern *115 referred to a right of way granted under the 1875 Act as an "easement" does not derail the Court's previous unequivocal pronouncements that rights of way under the Act are "made on an implied condition of reverter." Stringham, 239 U.S., at 47, 36 S.Ct. 5.
B
Not only does Great Northern fail to support the majority's conclusion; significant aspects of Great Northern 's reasoning actually support the contrary view. In that case, the Court relied heavily on Congress' policy shift in the early 1870's away from bestowing extravagant " 'subsidies in public lands to railroads and other corporations.' " 315 U.S., at 273-274, 62 S.Ct. 529 (quoting Cong. Globe, 42d Cong., 2d Sess., 1585 (1872)). That history similarly weighs in the Government's favor here. Just as the post-1871 Congress did not likely mean to confer subsurface mineral rights on railroads, as held in Great Northern , it did not likely mean to grant railroads an indefeasible property interest in rights of way-a kind of interest more generous than that which it gave in our cases concerning pre-1871 grants.
As in Great Northern , moreover, the purpose of the 1875 Act supports the Government. Congress passed the Act, we noted, "to permit the construction of railroads through public lands" and thus to "enhance their value and hasten their settlement." 315 U.S., at 272, 62 S.Ct. 529. In Great Northern , we held, that purpose did not require granting to the railroad any right to that which lay beneath the surface. The same is true here. As we recognized in Townsend and Stringham, the United States granted rights of way to railroads subject to "an implied condition of reverter in the event that the" railroads "cease[d] to use or retain the land for the purposes for which it is granted." Stringham, 239 U.S., at 47, 36 S.Ct. 5. Nothing about the purpose of the 1875 Act suggests Congress ever meant to abandon that sensible limitation.
Further, Great Northern relied on the conventional rule that "a grant is to be resolved favorably to a sovereign *116 grantor," 315 U.S., at 272, 62 S.Ct. 529, and that " 'nothing passes but what is conveyed in clear and explicit language,' " ibid. (quoting *1272 Caldwell v. United States, 250 U.S. 14, 20, 39 S.Ct. 397, 63 L.Ed. 816 (1919) ). "Nothing in the [1875] Act," we observed, "may be characterized as a 'clear and explicit' conveyance of the ... oil and minerals" underlying a right of way. 315 U.S., at 272, 62 S.Ct. 529. Just so here, as nothing in the 1875 Act clearly evinces Congress' intent not to make the rights of way conveyed under the Act defeasible, in the manner described by Townsend and Stringham . In fact, the presumption in favor of sovereign grantors applies doubly here, where the United States was the sovereign grantor both of the right of way and of the ultimate patent.
III
The majority notes that in Great Northern , the United States took the position that rights of way granted to railroads are easements. Ante, at 1264. In the majority's view, because the Great Northern Court adopted that position "in full," it is unfair for the Government to backtrack on that position now. Ante, at 1264.
Even assuming that it is an injustice for the Government to change positions on an issue over a 70-year period, it is not clear that such a change in position happened here. Yes, the Government argued in Great Northern that a right of way was an "easement." It proposed, however, that the right of way may well have had "some of the attributes of a fee." Brief for United States in Great Northern R. Co. v. United States, O.T. 1941, No. 149, pp. 36-37. The Government contended that it is " 'not important whether the interest or estate passed be considered an easement or a limited fee,' " observing that an easement "may be held in fee determinable." Id., at 35-36 (quoting United States v. Big Horn Land & Cattle Co., 17 F.2d 357, 365 (C.A.8 1927) ). Indeed, the Government expressly reserved the possibility that it retained a reversionary interest in the right of way, even if the surrounding land was patented to others. Brief for *117 United States in Great Northern, at 10 n. 4. The Court is right to criticize the Government when it takes "self-serving" and contradictory positions, ante, at 1265 - 1266, but such critique is misplaced here.
* * *
Since 1903, this Court has held that rights of way were granted to railroads with an implied possibility of reverter to the United States. Regardless of whether these rights of way are labeled "easements" or "fees," nothing in Great Northern overruled that conclusion. By changing course today, the Court undermines the legality of thousands of miles of former rights of way that the public now enjoys as means of transportation and recreation. And lawsuits challenging the conversion of former rails to recreational trails alone may well cost American taxpayers hundreds of millions of dollars.* I do not believe the law requires this result, and I respectfully dissent.

Dept. of Justice, Environment and Natural Resources Div., FY 2014 Performance Budget, Congressional Submission, p. 7, http://www.justice. gov/jmd/2014justification/pdf/enrd-justification.pdf (visited Mar. 7, 2014, and available in Clerk of Court's case file).